Jimmie Rogers v. State of Maryland, et al., No. 32, September Term, 2019

**MARYLAND SEX OFFENDER REGISTRY – REGISTRATION REQUIREMENTS – MD. CODE ANN., CRIM. PROC. (2001, 2008 REPL. VOL., 2016 SUPP.) § 11-701(p)(2) – HUMAN TRAFFICKING – MD. CODE ANN., CRIM. LAW (2002, 2012 REPL. VOL., 2016 SUPP.) § 11-303(a) – VICTIM'S AGE – STANDARD OF PROOF –** Court of Appeals held that, where petitioner pled guilty to violating Md. Code Ann., Crim. Law (2002, 2012 Repl. Vol., 2016 Supp.) § 11-303(a), offense whose elements did not require proof of victim's age, and where no proof of victim's age was established at plea proceeding, petitioner was not required to register as Tier II sex offender pursuant to Md. Code. Ann., Crim. Proc. (2001, 2008 Repl. Vol., 2016 Supp.) §§ 11-701(p)(2) and 11-704(a)(2). Department of Public Safety and Correctional Services lacked authority to determine on its own initiative that victim was minor and to order sex offender registration. No statute or regulation gives Department authority to make factual determination as to victim's age for purposes of requiring registration as Tier II sex offender.

Court of Appeals concluded that determination of fact necessary for placement on Maryland Sex Offender Registry—such as victim's age—must be made by trier of fact beyond reasonable doubt during adjudicatory phase of criminal proceeding.

Circuit Court for Anne Arundel County
Case No. C-02-CV-17-000296
Argued: January 10, 2020

IN THE COURT OF APPEALS

OF MARYLAND

No. 32

September Term, 2019

_____

JIMMIE ROGERS

v.

STATE OF MARYLAND, ET AL.

_____

Barbera, C.J.
McDonald
Watts
Hotten
Getty
Booth
Biran,

JJ.

_____

Opinion by Watts, J.
Barbera, C.J., Hotten and Biran, JJ., dissent.

_____

Filed: March 31, 2020

Pursuant to Maryland Uniform Electronic Legal Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document
is authentic.



Suzanne C. Johnson, Clerk

On October 20, 2015, in the Circuit Court for Anne Arundel County, Jimmie Rogers, Petitioner, pled guilty to one count of human trafficking under Md. Code Ann., Crim. Law (2002, 2012 Repl. Vol., 2016 Supp.) ("CR") § 11-303(a).[1] The age of the victim was not established during the statement of facts at the plea proceeding. Rogers was sentenced pursuant to a plea agreement that did not include registration as a sex offender as a requirement. Later, Rogers was notified by the Department of Public Safety and Correctional Services ("the Department"), Respondent, that he was required to register as a Tier II sex offender with the Maryland Sex Offender Registry ("the Registry") for a period of twenty-five years. Rogers registered as instructed but filed in the circuit court a complaint for declaratory judgment against the State of Maryland, Respondent, and the Department (together, "the State"), seeking a declaration that he was not required to register as a Tier II sex offender, and an order compelling the Department to remove him from the Registry. The circuit court granted Rogers's motion for summary judgment on the ground that the victim's age had not been proven. The circuit court issued an order declaring that Rogers was not required to register as a Tier II sex offender and requiring the State to remove Rogers's name from the Registry. The State appealed. The Court of Special Appeals reversed and remanded the case to the circuit court for a determination of the victim's age by a preponderance of the evidence.

---

[1]Effective October 1, 2019, CR § 11-303 was renumbered as Crim. Law (2002, 2012 Repl. Vol., 2019 Supp.) § 3-1102. See 2019 Md. Laws 472-73, 476-77, 488 (Vol. I, Ch. 21, H.B. 871); 2019 Md. Laws 488, 492-93, 504 (Vol. I, Ch. 22, S.B. 690). We refer to CR § 11-303, the version of the statute that was in effect at the time of the proceedings in this case.

A conviction under CR § 11-303(a) does not require that the victim be a minor. A violation of CR § 11-303(a) is a misdemeanor that is punishable by up to ten years' imprisonment, a fine not exceeding $5,000, or both. See CR § 11-303(c)(1)(i). Under CR § 11-303(a)(1), among other things, "[a] person may not knowingly: (i) take or cause another to be taken to any place for prostitution; (ii) place, caused to be placed, or harbor another in any place for prostitution; [or] (iii) persuade, induce, entice, or encourage another to be taken to or placed in any place for prostitution[.]" (Paragraph breaks omitted). The age of the victim is not a necessary element of the offense; stated otherwise, no proof of the victim's age is needed for a conviction under CR § 11-303(a).

By contrast, CR § 11-303(b)(1) expressly prohibits a violation of subsection (a) involving a victim who is a minor and such a violation constitutes a felony that is punishable by up to twenty-five years' imprisonment, a fine not exceeding $15,000, or both. See CR § 11-303(c)(2). Pursuant to Md. Code Ann., Crim. Proc. (2001, 2008 Repl. Vol., 2016 Supp.) ("CP") § 11-701(p)(2),[2] a Tier II sex offender is described, in pertinent part, as a person convicted of "conspiring to commit, attempting to commit, or committing a violation of [CR] § 11-303"—without reference to a specific subsection of that statute— "if the intended prostitute or victim is a minor[.]" Pursuant to CP § 11-704(a)(2), a Tier II sex offender is required to register with the Registry.

Against this backdrop, we consider whether a person, like Rogers, who is convicted of human trafficking under CR § 11-303(a) is required to register as a Tier II sex offender

_____

[2]This is the version of the statute in effect at the time of the proceedings in this case.

- 2 -

with the Registry where the victim's age was not established during a guilty plea proceeding. We must first ascertain whether the Department is authorized to make a determination after a person is convicted and sentenced as to whether the victim was a minor at the time of the offense and order the person to register. We also address the point at which the determination is to be made and the required standard of proof.

We hold that, where Rogers pled guilty to violating CR § 11-303(a), an offense whose elements did not require proof of the victim's age, and where no proof of the victim's age was established at the plea proceeding, Rogers was not required to register as a Tier II sex offender pursuant to CP §§ 11-701(p)(2) and 11-704(a)(2), and the Department lacked the authority to determine that the victim was a minor and to order registration. No statute or regulation gives the Department the authority to make a factual determination as to the victim's age for purposes of determining that registration as a Tier II sex offender is required. We conclude that determination of a fact necessary for placement on the Registry—*e.g.*, the victim's age—must be made by the trier of fact beyond a reasonable doubt during the adjudicatory phase of the criminal proceeding prior to sentencing. We reverse the judgment of the Court of Special Appeals and conclude that the circuit court properly granted summary judgment and declaratory judgment in favor of Rogers.

## BACKGROUND

### Criminal Case

Rogers was charged in the District Court of Maryland, sitting in Anne Arundel County, with several counts of human trafficking of a minor and prostitution arising out of an incident that occurred at a Red Roof Inn. In a sworn Statement of Charges, a law

enforcement officer identified the victim as "a juvenile" and "a minor[.]" (Capitalization omitted). Subsequently, Rogers was charged by indictment in the circuit court with five counts of human trafficking of a minor in violation of CR § 11-303(b) and two counts of prostitution in violation of CR § 11-306.

Rogers decided to plead guilty. On October 20, 2015, at the start of Rogers's plea proceeding, as part of a plea agreement, Count Five of the indictment was amended from alleging that Rogers had trafficked a minor victim in violation of CR § 11-303(b) to allege human trafficking generally in violation of CR § 11-303(a). Rogers pled guilty to the amended Count Five and the State entered a *nolle prosequi* on the remaining charges. The prosecutor read the following statement of facts into the record:

> [O]n April 3rd of 2015[,] Trooper [C.G. Heid] of the Maryland State Police . . . was working in an undercover capacity . . . actively looking for a missing young woman. . . . He had received word as part of a task force that he's on that she was missing and may be involved in prostitution against her will.
>
> He found an ad in the Backpage ads, . . . which advertise for prostitution. And he called that number. He would have told you in his training, knowledge, and experience that in the Backpage ads they are advertising sex in exchange for money. And this ad had all of the hallmarks of those types of ads. And he would have told you in his training, knowledge, and experience he thought that perhaps this was the missing girl.
>
> He called the number, . . . and . . . there was a voice on the other end. . . . The subject that answered the call stated, "Hello." The voice clearly sounded like a man trying to disguise his voice to be that of a woman, according to the Trooper.
>
> The Trooper asked that person on the other end of the line if that person was working today, and the person said, "Yes." The person asked if the Trooper wanted to come see her today, saying that she was a woman. And the Trooper asked if he could come see her around 9:00 a.m., she said, "Yes."

- 4 -

Based on the photos in the ad, it appeared that the hotel was the Red Roof Inn. The Trooper is familiar with that hotel, and . . . there are a lot of people engaging in prostitution out of that hotel, the Trooper would have told you in his training, knowledge, and experience.

They actually utilized surveillance around the motel in an attempt to locate another person who might be assisting the young woman who was in the ad. They know that through their training, knowledge, and experience that that is often the case that a pimp will be in the area, surveilling the area, leaving the hotel room just before a date, [with] a person coming to participate in the prostitution. Comes to the hotel room, and then the person who is supervising that prostitution will then come immediately thereafter.

They did go to that area, . . . which is located in Anne Arundel County, Maryland, at the Red Roof Inn. They surveilled from the inn next door, which is the Hampton Inn, they saw a person who would be identified as . . . Rogers[] walk to a room on the odd numbered side of the motel, two minutes later he came back to the vehicle that he had previously been in, and pulled away. And that was right at the time that they were coming for the 9:00 date.

At 9:22, they got a text from that same phone number that the Trooper had called previously, indicating that he should come to the Red Roof Inn . . . where they were already there surveilling. At 9:29 hours, he called back and the voice [that] answered . . . was clearly a female this time, same phone number but clearly a woman, a young woman, and certainly not the same person he had spoken to earlier. The woman said that she would text the room, and at 9:31 she texted room 333.

The Trooper arrived at room 333, knocked on the door. A young woman looked through the window and then came and opened the door, invited the Trooper in. Several Troopers then entered the room, identified themselves as police officers, and then spoke with the young woman who, in fact, was the missing girl. . . .

She was very nervous, constantly looking towards the curtain and the door. She said that her boss, those were her words, her boss would probably be coming back to the motel to keep an eye on her. She said that she was exchanging sex for money at his behest. She said that she was doing it because he was giving her drugs that she needed at that time, that she was addicted to drugs. . . .

She said that her boss rented the room for her. And, in fact, we would have produced evidence that [Rogers] did, in fact, rent room 333 [] for

several days, indicating that one person was staying there, and that was [the victim].

[S]he said he was currently holding $400 for her of her proceeds that she had made through prostitution. And by holding it later became clear that she meant he was not permitting her to have the proceeds of the prostitution. He was keeping them for himself. But she explained at that time that . . . their arrangement was that he was going to keep half of what she earned after each date. That he was providing security for her . . . and helps when she makes the dates.

She said that he posts her ads on the Backpage magazine on his phone, and then also takes her phone and uses that as well. She said that she felt pressure and . . . makes the dates because he yelled at her to do that. She indicate[d] that she had sexual intercourse with men for money and that she had done that over the past couple of days . . . in that very hotel room. She said that she did confirm that it was [Rogers] who had answered the phone when the Trooper had called and pretended to be her and set up the date.

She was subsequently taken into custody . . . and provided a very detailed recorded statement with more information with regard to the[] events. But suffice [it] to say, . . . [Rogers] was benefiting from the proceeds of prostitution, which he had convinced [the victim] to be involved [] in Anne Arundel County.

The victim's age was not included in the statement of facts or established during the plea proceeding.

The circuit court sentenced Rogers to ten years of imprisonment, with all but eighteen months suspended, with credit for 202 days served, followed by two years of supervised probation.

After Rogers's release from prison, the Department advised him that he was required to register as a Tier II sex offender for a period of twenty-five years. On October 4, 2016, Rogers completed his initial registration.

**Complaint for Declaratory Judgment**

On January 31, 2017, in the circuit court, Rogers filed a Complaint for Declaratory Judgment against the State, seeking a declaration that his conviction did not require him to register as a Tier II sex offender and an order compelling the Department to remove him from the Registry.

On September 8, 2017, the State filed a motion for summary judgment, arguing that, because Rogers had been convicted under CR § 11-303 and had never disputed that the victim was a minor, the plain language of CP § 11-701(p)(2) required him to register as a Tier II sex offender. The State attached to the motion an affidavit from Allison Gilford, the Supervisor and custodian of records for the Registry, who averred that the Registry's file on Rogers and court records demonstrated that the guilty plea arose from charges that had been filed against Rogers for "participating in the prostitution of a minor." Attached as exhibits to Gilford's affidavit were: (1) the Criminal Hearing Sheet indicating that Rogers pled guilty to Count Five after it was amended to "read CR [§] 11-303(a) rather than CR [§] 11-303(b)"; (2) the Statement of Charges prepared by a Maryland State Trooper referring to the victim as "a juvenile" and "a minor" (capitalization omitted); and (3) the indictment charging Rogers with five counts of human trafficking of a minor in violation of CR § 11-303(b).

Rogers filed a motion for summary judgment and a response to the State's motion for summary judgment, arguing that, because he had been convicted under CR § 11-303(a), not CR § 11-303(b), and because the State had failed to establish that the victim was a minor, he was not required to register as a Tier II sex offender under CP § 11-701(p)(2).

- 7 -

Rogers asserted that there was no evidence in the record that the victim of the charge to which he pled guilty was a minor or was even the same victim referenced in the other charges.

The circuit court held a hearing on the cross-motions for summary judgment. The circuit court ruled from the bench, granting Rogers's motion for summary judgment and denying the State's motion for summary judgment. The circuit court issued a "Declaratory Judgment and Order," stating:

> DECLARED, ADJUDGED AND DECREED, that [] Rogers is not required to register as a Tier II sex offender on the basis of his conviction in State of Maryland vs. Jimmie Junior Rogers . . . and accordingly, it is hereby:
>
> ORDERED, that (1) [] Rogers shall not be required, ordered, or directed to register as a Tier II sex offender on the basis of his conviction in State of Maryland vs. Jimmie Junior Rogers . . . and, (2) Defendants State of Maryland and [] Department [], and any other agency charged with administering such registry, shall remove [] Rogers'[s] name from any and all sex offender registries on which it appears as a result of his conviction in State of Maryland v. Jimmie Junior Rogers[.]

(Cleaned up).

The State filed a notice of appeal.

**Opinion of the Court of Special Appeals**

On March 28, 2019, in a reported opinion, the Court of Special Appeals reversed the circuit court's judgment and remanded the case to the circuit court for a hearing on the age of the victim, to be proven by a preponderance of the evidence. See State v. Rogers, 240 Md. App. 360, 362, 370, 205 A.3d 36, 38, 42 (2019). The Court of Special Appeals rejected Rogers's contention that his conviction under CR § 11-303(a) did not require him to register as a sex offender, and held that, under CP § 11-701(p)(2), individuals convicted

of violating CR § 11-303 are required to register as Tier II sex offenders if the offense is perpetrated against a minor. See id. at 366, 205 A.3d at 40. According to the Court of Special Appeals, "[t]he registration statute does not differentiate between convictions under CR § 11-303(b), a crime for which the victim's age is an element, and CR § 11-303(a), for which the victim's age is not—a conviction under either sub[section] triggers tier II status if the victim is a minor." Id. at 366-67, 205 A.3d at 40. The Court of Special Appeals reasoned that, because the victim's age was not an element of the crime of which Rogers was convicted, age did not need to be proven beyond a reasonable doubt. See id. at 366, 205 A.3d at 40. The Court of Special Appeals stated that sex offender registration is not punishment, and, as such, is not "subject to the evidentiary [standard] of proof beyond a reasonable doubt." Id. at 367, 205 A.3d at 40. The Court of Special Appeals remanded the case for the circuit court to determine by a preponderance of the evidence whether the victim was a minor at the time of the offense and to determine whether Rogers was required to register as a Tier II sex offender under CP § 11-704. See id. at 370, 205 A.3d at 42.

**Petition for a Writ of *Certiorari***

On May 15, 2019, Rogers petitioned for a writ of *certiorari*, raising the following two issues:

> 1. When [] Rogers pled guilty to an offense under a statute requiring no proof of the victim's age and no proof of age is provided, does the Department [] have the authority to make an *ex parte* finding of fact that the victim is a minor and thus, order [] Rogers to register as a tier II offender?
>
> 2. Assuming *arguendo* that the Department [] has the authority to make *ex parte* findings of fact regarding the age of the victim, what level of proof is required and who may make the ultimate determination of fact?

On May 29, 2019, the State filed an answer to the petition for a writ of *certiorari* and a conditional cross-petition, raising the following three issues:

1.      Did the Court of Special Appeals correctly apply settled law when it reversed the circuit court's order granting [] Rogers's motion for summary judgment, where [] Rogers failed to demonstrate, as a matter of law, that he is not required to register as a sex offender based upon his conviction for human trafficking in violation of [CR] § 11-303?

2.      Is [] Rogers's separation-of-powers argument both unpreserved and meritless?

3.      Is the State entitled to summary judgment where [] Rogers did not genuinely dispute the State's evidence proving that the victim of [] Rogers['s] human-trafficking offense was a minor, thus establishing as a matter of law that [] Rogers was required to register as a sex offender based upon his conviction of human trafficking in violation of [CR] § 11-303?

On August 26, 2019, this Court granted the petition and the conditional cross-petition. See Rogers v. State, 465 Md. 666, 214 A.3d 1195 (2019).

## STANDARD OF REVIEW

Summary judgment is appropriate where "the motion and response show that there is no genuine dispute as to any material fact and that the party in whose favor judgment is entered is entitled to judgment as a matter of law." Kennedy Krieger Inst. v. Partlow, 460 Md. 607, 632, 191 A.3d 425, 440 (2018) (citation omitted). "[W]hether a trial court's grant of summary judgment was proper is a question of law subject to *de novo* review on appeal[,]" and "we independently review the record to determine whether the parties properly generated a dispute of material fact, and, if not, whether the moving party is entitled to judgment as a matter of law." Id. at 632, 191 A.3d at 440 (citation omitted). "We review the record in the light most favorable to the nonmoving party and construe any

reasonable inferences that may be drawn from the facts against the moving party." Id. at 632-33, 191 A.3d at 440 (citation omitted).

"The standard of review for a declaratory judgment entered as a result of the grant of a motion for summary judgment is whether that declaration was correct as a matter of law." Catalyst Health Sols., Inc. v. Magill, 414 Md. 457, 471, 995 A.2d 960, 968 (2010) (cleaned up). Where an issue surrounding a declaratory judgment order involves an interpretation and application of Maryland law, "we must determine whether the [trial] court's conclusions are legally correct under a *de novo* standard of review." Dep't of Pub. Safety and Corr. Servs. v. Doe, 439 Md. 201, 219, 94 A.3d 791, 801 (2014) ("Doe II") (cleaned up).

Recently, in Sabisch v. Moyer, 466 Md. 327, 350, 220 A.3d 272, 285 (2019), we set forth the following rules of statutory construction:

> The cardinal rule of statutory construction is to ascertain and effectuate the intent of the General Assembly.
>
> As this Court has explained, to determine that purpose or policy, we look first to the language of the statute, giving it its natural and ordinary meaning. We do so on the tacit theory that the General Assembly is presumed to have meant what it said and said what it meant. When the statutory language is clear, we need not look beyond the statutory language to determine the General Assembly's intent. If the words of the statute, construed according to their common and everyday meaning, are clear and unambiguous and express a plain meaning, we will give effect to the statute as it is written. In addition, we neither add nor delete words to a clear and unambiguous statute to give it a meaning not reflected by the words that the General Assembly used or engage in forced or subtle interpretation in an attempt to extend or limit the statute's meaning. If there is no ambiguity in the language, either inherently or by reference to other relevant laws or circumstances, the inquiry as to legislative intent ends.

(Citation omitted).

## DISCUSSION[3]

## I.

### The Parties' Contentions

Rogers contends that, under the circumstances of this case—where he pled guilty to an offense not requiring proof of the victim's age and where no proof of the victim's age was established at the plea proceeding—the Department lacked the authority to determine that the victim was a minor and to order him to register as a Tier II sex offender. Rogers argues that a conviction for human trafficking under CR § 11-303(a) does not trigger the Registry's requirements for Tier II sex offender registration. Rogers asserts that nothing in the sex offender registry statutes authorizes the Department or the Registry's manager to evaluate evidence and determine facts beyond the record of conviction.

The State responds that, under CP § 11-701(p)(2)'s plain language, sex offender registration is required where a person is convicted of violating CR § 11-303 and the victim is a minor. The State argues that the absence of proof of the victim's age from the guilty plea record did not nullify Rogers's obligation to register as a Tier II sex offender and the Department had the authority to determine the victim's age where that fact had not been determined in the underlying criminal proceeding. The State maintains that the Department

---

[3]We consolidate the questions presented by the parties into two issues—the first addressing whether registration is required under the circumstances of this case and who may make a determination of the victim's age, the second addressing at what point a determination of the victim's age must be made and what standard of proof is required. To the extent that the State raises a question as to whether Rogers's separation of powers argument is preserved, Rogers's assertion that the Department's action violated the separation of powers doctrine is not a basis for the holding in this case. As such, we need not address whether the issue is preserved.

properly determined that the victim was a minor, and asserts that, in the civil proceeding, Rogers did not genuinely dispute that finding.

## Relevant Statutes and Regulations

At all relevant times, CR § 11-303 provided in pertinent part:

(a)(1) A person may not knowingly:

> (i) take or cause another to be taken to any place for prostitution;
>
> (ii) place, cause to be placed, or harbor another in any place for prostitution;
>
> (iii) persuade, induce, entice, or encourage another to be taken to or placed in any place for prostitution;
>
> (iv) receive consideration to procure for or place in a house of prostitution or elsewhere another with the intent of causing the other to engage in prostitution or assignation;
>
> (v) engage in a device, scheme, or continuing course of conduct intended to cause another to believe that if the other did not take part in a sexually explicit performance, the other or a third person would suffer physical restraint or serious physical harm; or
>
> (vi) destroy, conceal, remove, confiscate, or possess an actual or purported passport, immigration document, or government identification document of another while otherwise violating or attempting to violate this subsection.

. . .

(b)(1) A person may not violate subsection (a) of this section involving a victim who is a minor.

. . .

(c)(1)(i) Except as provided in paragraph (2) of this subsection, a person who violates subsection (a) of this section is guilty of the misdemeanor of human trafficking and on conviction is subject to imprisonment not exceeding 10

- 13 -

years or a fine not exceeding $5,000 or both.

>> (ii) A person who violates subsection (a) of this section is subject to § 5-106(b) of the Courts Article.

>> (2) A person who violates subsection (b) of this section is guilty of the felony of human trafficking and on conviction is subject to imprisonment not exceeding 25 years or a fine not exceeding $15,000 or both.

A predecessor of CR § 11-303 was added to the Criminal Law Article of the Code of Maryland in 2002 as part of the creation of the Criminal Law Article; previously, the section was Art. 27, § 428. See 2002 Md. Laws 197, 200, 779 (Vol. I, Ch. 26, H.B. 11). At that time, Md. Code Ann., Crim. Law (2002) § 11-303 did not contain a provision concerning conduct in which the victim was a minor, and simply provided that a person who violated the section was guilty of the misdemeanor of pandering. See id. at 779. In 2007, Md. Code Ann., Crim. Law (2002, 2006 Supp.) § 11-303 was amended to change the term "pandering" to "human trafficking," to add a new subsection (b) to provide that "[a] person may not violate subsection (a) of this section involving a victim who is a minor[,]" and to make a violation of subsection (b) involving a minor victim a felony that is subject to a higher maximum sentence. 2007 Md. Laws 2144-45, 2151-52 (Vol. III, Ch. 340, S.B. 606).[4]

---

[4]In 2009, Md. Code Ann., Crim. Law (2002, 2008 Supp.) § 11-303(a)(1)(iii) was amended from "[a] person may not knowingly[] . . . persuade or encourage by threat or promise another to be taken to or placed in any place for prostitution" to provide that "[a] person may not knowingly[] . . . persuade, induce, entice, or encourage another to be taken to or placed in any place for prostitution[.]" 2009 Md. Laws 722-23 (Vol. I, Ch. 143, H.B. 542) (cleaned up). In 2010, Md. Code Ann., Crim. Law (2002, 2009 Supp.) § 11-303(a)(1) was amended such that § 11-303(a)(1)(iv), (v), and (vi) appear as they did in CR § 11-303(a)(1). See 2010 Md. Laws 3567, 3569-70 (Vol. IV, Ch. 529, S.B. 261). The following

In 2013, Md. Code Ann., Crim. Law (2002, 2012 Repl. Vol.) § 11-303 was amended to add a new subsection (f), which provided that "[i]t is not a defense to a prosecution under sub[paragraph] (b)(1) of this section that the person did not know the age of the victim." 2013 Md. Laws 5592-94 (Vol. VII, Ch. 653, H.B. 933) (cleaned up). From 2013 to 2019, the time period relevant here, CR § 11-303 remained unchanged. Effective October 1, 2019, as part of the reorganization and amendment of certain provisions relating to sex trafficking and prostitution, CR § 11-303 was renumbered as Crim. Law (2002, 2012 Repl. Vol., 2019 Supp.) § 3-1102. See 2019 Md. Laws 472-73, 476-77, 488 (Vol. I, Ch. 21, H.B. 871); 2019 Md. Laws 488, 492-93, 504 (Vol. I, Ch. 22, S.B. 690). Among other amendments, the term "human trafficking" was replaced with "sex trafficking[.]" 2019 Md. Laws 477, 492-93 (cleaned up). CR § 11-303(a) and (b)(1) were renumbered as Md. Code Ann., Crim. Law (2002, 2012 Repl. Vol., 2019 Supp.) § 3-1102(a) and (b)(1) without change. Id. at 476, 492.

As to sex offender registration, at the relevant time, CP § 11-701(p)(2) defined a "Tier II sex offender" in pertinent part as "a person who has been convicted of[] . . .

_____

year, Md. Code Ann., Crim. Law (2002, 2010 Supp.) § 11-303 was repealed and reenacted without amendments, and a new section was added to the Criminal Procedure Article to provide that a person who was convicted of prostitution under a different section of the Criminal Law Article could

> file a motion to vacate the judgment if, when the person committed the act or acts of prostitution, the person was acting under duress caused by an act of another committed in violation of the prohibition against human trafficking under § 11-303 of the Criminal Law Article or under federal law.

2011 Md. Laws 1016-17, 1021 (Vol. II, Ch. 218, S.B. 327) (cleaned up).

conspiring to commit, attempting to commit, or committing a violation of [CR] § 11-303, § 11-305, or § 11-306 . . . if the intended prostitute or victim is a minor[.]" At that time, CR § 11-303 stated what is set forth above. CR § 11-305(a) concerned abduction of children under sixteen years of age. CR § 11-306 concerned prostitution, providing, among other things, that "[a] person may not knowingly[] engage in prostitution or assignation by any means[ or] keep, set up, occupy, maintain, or operate a building, structure, or conveyance for prostitution or assignation[.]" CR § 11-306(a)(1), (2) (paragraph breaks omitted).

When Md. Code Ann., Crim. Law (2002) § 11-303 was enacted, it did not contain a provision concerning conduct in which the victim was a minor—*i.e.*, the provision that later was enacted as Md. Code Ann., Crim. Law (2002, 2007 Supp.) § 11-303(b)(1). A predecessor of CP § 11-701, which was added to the Criminal Procedure Article in 2001, defined an "offender" in pertinent part as a person "ordered by a court to register" and who had been convicted of violating any of the pandering statutes, including CR § 11-303's predecessor (Art. 27, § 428) "if the intended prostitute [was] under the age of 18 years[.]" 2001 Md. Laws 76, 380, 382 (Vol. I, Ch. 10, S.B. 1) (cleaned up). Effective October 1, 2019, the references to the statutes in CP § 11-701(p)(2) were updated so that paragraph now provides that "'Tier II sex offender' means a person who has been convicted of[] . . . conspiring to commit, attempting to commit, or committing a violation of § 3-1102, § 3-1103, § 11-303, § 11-305, § 11-306, or § 11-307 of the Criminal Law Article, if the intended prostitute or victim is a minor[.]" 2019 Md. Laws. 472, 474, 483, 488 (Vol. I,

- 16 -

Ch. 21, H.B. 871) (cleaned up).[5]

Pursuant to CP § 11-713(2), the Department must "keep a central registry of registrants[.]" Registrants are required to file registration statements containing, among other things, the registrant's full name and all addresses and places where the registrant resides or habitually lives; the name and address of each of the registrant's employers; a description of the crime of which the registrant was convicted; all identifying factors, including a physical description; information for any vehicle owned or regularly operated by the registrant and the locations where all vehicles are kept; and the registrant's fingerprints and palm prints. See CP § 11-706(a). Under CP § 11-717(a)(1), the Department is required to "make available to the public registration statements or information about registration statements." The Department is required to post on the Internet:

> (1) a current listing of each registrant's name and other identifying information; and

> (2) in plain language that can be understood without special knowledge of the criminal laws of the State, a factual description of the crime of the offender that is the basis for the registration, excluding details that would identify the victim.

CP § 11-717(b). Members of the public are permitted to electronically transmit information about a registrant to the Department. See CP § 11-717(c)(1). CP § 11-721(a) provides, among other things, that "[a] registrant may not knowingly fail to register, . . . or

---

[5]We refer to the version of the statute that was in effect at the time of the underlying proceedings—CP § 11-701(p)(2)—and not the version of the statute that became effective last year.

knowingly provide false information of a material fact as required by this subtitle." A first-time violation of CP § 11-721 constitutes a misdemeanor and a second or subsequent violation constitutes a felony. See CP § 11-721(b).

CP § 11-720 provides that the Secretary shall adopt regulations to carry out the subtitle. To that end, Code of Maryland Regulations ("COMAR") 12.06.01.01 to 12.06.01.18 set forth regulations related to the administration of sex offender registration. COMAR 12.06.01.06B(1) provides that "[a] supervising authority shall establish procedures for[ o]btaining information required for the registration statement before [] its submission to the Sex Offender Registry Unit and to other agencies as required[.]" And, the Sex Offender Registry Unit is required to:

> (1) Maintain a central registry:
>      (a) Initiated by receipt of registration statements; and
>      (b) Updated by receipt of periodic registration documentation and
> notice of changes of registrant's address or other status;
> (2) Determine if a registrant should be placed in an under investigation or
> absconder status;
> (3) Calculate terms of registration; and
> (4) Authorize termination of registration.

COMAR 12.06.01.08A.

### Relevant Case Law

In Doe II, 439 Md. at 237, 94 A.3d at 812, this Court explained that the Department's Sex Offender Registry Unit "is in charge of the maintenance of all sex offender registration information for the State[, and p]ursuant to Maryland regulations, . . . has the authority to maintain Maryland's central registry, as well as to manage and authorize termination of registration." (Citation omitted). We stated that a trial court has

"the authority to compel the State to remove all of its records relating to [a person]'s registration as a sex offender[.]" Id. at 237, 94 A.3d at 812.

Maryland case law has recognized that the Registry is a conviction-based registration scheme. In In re Nick H., 224 Md. App. 668, 673, 700, 123 A.3d 229, 232, 247-48 (2015), a case in which the trial court ordered a child respondent to register as a sex offender, the Court of Special Appeals observed:

> One aspect of [the Registry Act] that was important to the holding of a violation of the constitutional prohibition against *ex post facto* laws by the Court of Appeals . . . and by this Court . . . was the automatic imposition of the registration requirement because of a conviction for a particular sex crime.

(Citations omitted). The Court of Special Appeals explained that the requirement of sex offender registration "appl[ies] automatically by operation of Maryland law." Id. at 710, 123 A.3d at 254.

As to being required to register, in Cain v. State, 386 Md. 320, 322, 325 n.6, 872 A.2d 681, 682, 684 n.6 (2005), this Court considered whether a person convicted of second-degree assault was required to register as an "offender" under what was then Md. Code Ann., Crim. Proc. (2001) § 11-701(d)(7), which provided that "'[o]ffender' means a person who is ordered by a court to register under this subtitle and who[] has been convicted of a crime that involves conduct that by its nature is a sexual offense against a person under the age of 18 years[.]" We held "that a person convicted of second[-]degree assault [was] not required to register as an offender under the Registration of Offenders statute, unless the elements of the crime contain[ed] reference to a sexual offense against a minor." Id. at 322, 872 A.2d at 682. In that case, the defendant was charged with one count of child

abuse, two counts of third-degree sexual offense, and one count of second-degree assault, and he pled guilty to second-degree assault. See id. at 322-23, 872 A.2d at 682-83. During the guilty plea proceeding, defense counsel advised that the prosecutor was going to ask that the defendant register under the registration statute and that counsel was going to argue against registration. See id. at 324, 872 A.2d at 683. At the sentencing proceeding, defense counsel asked that the defendant not be required to register as a sex offender. See id. at 325, 872 A.2d at 684. The trial court ultimately ordered the defendant to register as an offender as a condition of his probation. See id. at 326, 872 A.2d at 684-85. The defendant filed a motion to correct an illegal sentence, arguing that the conviction for second-degree assault did not fall within the definition of "offender" set forth in Md. Code Ann., Crim. Proc. (2001) § 11-701(d)(7). See id. at 326, 872 A.2d at 685. The trial court denied the motion. See id. at 327, 872 A.2d at 685. The defendant appealed, and, on our own initiative, this Court issued a writ of *certiorari*. See id. at 327, 872 A.2d at 685.

This Court held that the defendant was not required to register as a sex offender, and reversed the trial court's denial of the motion to correct an illegal sentence. See id. at 327, 872 A.2d at 685. The defendant "argue[d] that the elements of the crime of assault for which he was convicted negate[d] the registration requirement, while the State assert[ed] that the underlying facts to which [he] pled guilty mandate[d] registration." Id. at 329, 872 A.2d at 686. In deciding the issue, this Court extensively reviewed the history of Maryland's offender registration laws and the Registry. See id. at 329-35, 872 A.2d at 686-90. We observed that second-degree assault was "not one of the enumerated crimes in the statute requiring registration, such as rape, kidnaping, false imprisonment, or

violations of the child pornography statute." Id. at 335, 872 A.2d at 690 (citation omitted).

We addressed the State's contention that the defendant was "required to register because the facts contained in the statement of facts underlying the assault by their nature constituted a sexual offense under Section 11-701(d)(7)." Id. at 335, 872 A.2d at 690. We noted that the statute defined an offender as someone who was "'convicted of a *crime* that involves conduct that by its nature is a sexual offense' against a minor[,]" meaning that we needed to look at "the elements of the crime [of] which [the defendant was] convicted" to determine whether registration was required. Id. at 336, 872 A.2d at 690 (emphasis in original). Looking at the elements of second-degree assault, of which the defendant was convicted, we observed that the offense did not contain references to a sexual offense against a minor, and instead consisted of "the common[-]law offenses of assault, assault and battery, and battery, unless aggravated to the greater offense of first[-]degree assault by the use of a firearm or intent to cause serious physical injury[,]" which did not "contemplate conduct that by its nature involves a sexual offense." Id. at 338, 872 A.2d at 691-92 (cleaned up).

We determined that, to qualify as an offender under the statute at issue, the statute "require[d] that sexual conduct that involve[d] an underage person [] be presented within the crime charged and which the person [stood] convicted." Id. at 338, 872 A.2d at 692. In our view, "[t]o hold otherwise would expose individuals to possible registration that have been convicted of crimes that do not include elements related to sexual conduct with a minor[.]" Id. at 338, 872 A.2d at 692. We concluded that the trial court erred in denying the motion to correct an illegal sentence and we ordered the trial court to vacate the

condition of probation requiring the defendant to register as an offender. See id. at 340, 872 A.2d at 693. We explained:

> [T]he trial [court] acknowledged that [the defendant] had agreed to plead guilty to second[-]degree assault, which the [trial court] described as "unpermitted touching." The State entered a nolle prosequi on the other charges against [the defendant], relating to child abuse and a sexual offense which left only the elements of second[-]degree assault, i.e.[,] the unlawful application of force to another person, remaining without implication of sexual conduct involving a minor.

Id. at 340, 872 A.2d at 693.

In State v. Duran, 407 Md. 532, 554, 967 A.2d 184, 197 (2009), a case addressing the same statutory provision as Cain, among other things, this Court held "that indecent exposure is not a crime that by its nature is a sexual offense" and that the defendant, who was convicted of indecent exposure, was "not required to register as a[n] 'offender' under" Md. Code Ann., Crim. Proc. (2001, 2006 Supp.) § 11-701(d)(7). In Duran, 407 Md. at 534, 967 A.2d at 185, the defendant exposed himself to girls of middle school age on three occasions and he was indicted on four counts of indecent exposure. The defendant pled guilty to one count of indecent exposure in each of three cases. See id. at 534, 967 A.2d at 185. At the sentencing proceeding, the State requested, and the trial court ordered, that the defendant register as a sex offender. See id. at 534, 967 A.2d at 185. The defendant appealed, and the Court of Special Appeals vacated the condition of probation requiring registration, concluding that "the elements of the crime of indecent exposure 'do not contain reference to a sexual offense against a minor,'" and thus "registration was outside the scope of the plea agreement." Id. at 534, 967 A.2d at 185 (citation omitted).

On review, we observed that Md. Code Ann., Crim. Proc. (2001, 2006 Supp.) § 11-

704(a) required that "an offender" register with their supervising authority, and that Md. Code Ann., Crim. Proc. (2001, 2006 Supp.) § 11-701(d) defined an offender "as a person who has committed an enumerated offense or who has been convicted of a crime that involves conduct that by its nature is a sexual offense against a person under the age of 18 years[.]" Id. at 547-48, 967 A.2d at 192-93 (cleaned up). Because indecent exposure was not an enumerated offense, we addressed whether it was a crime that by its nature was a sexual offense. See id. at 549, 967 A.2d at 193-94. Tracing the historical basis of the crime, we concluded that "indecent exposure is not in and of itself sexual in nature, because the lewdness element incorporates conduct that is not sexual, in addition to that which may be sexual." Id. at 553, 967 A.2d at 196. In short, we determined that "neither this Court's interpretation of the common[-]law indecent exposure nor any statute requires a sexual component." Id. at 554, 967 A.2d at 197.

We rejected the State's argument that the appropriate remedy was to vacate the defendant's plea instead of striking the registration condition of probation. See id. at 555, 967 A.2d at 197. We explained that we disagreed "because the trial court had no authority under the statute to require [the defendant] to register and the registration condition was not integral to the plea agreement; it was not even a subject of negotiation." Id. at 555, 967 A.2d at 197-98. Thus, the appropriate remedy was to strike the condition of probation that the defendant register as a sex offender. See id. at 556, 967 A.2d at 198.

**Analysis**

Here, we hold that, where Rogers pled guilty to violating CR § 11-303(a), an offense whose elements do not require proof of the victim's age, and where no proof of the victim's

age was established at the plea proceeding, Rogers was not required to register as a Tier II sex offender pursuant to CP §§ 11-701(p)(2) and 11-704(a)(2). The Department lacked the authority to determine on its own initiative that the victim was a minor and to order registration. No statute or regulation gives the Department the authority to make a factual determination as to the victim's age and to require that an individual register as a Tier II sex offender.

We begin by examining the plain language of the relevant statutes. Indisputably, CR § 11-303(a) does not mention the victim's age. CR § 11-303(a) prohibits, among other things, the knowing taking or causing of someone to be taken to any place for prostitution, harboring someone in a place for prostitution, and persuading, inducing, enticing, or encouraging someone to be taken to any place for prostitution. CR § 11-303(a) criminalizes human trafficking, and is a misdemeanor that carries a maximum sentence of ten years' imprisonment, a $5,000 fine, or both. See CR § 11-303(c)(1)(i). CR § 11-303(a) does not contain any reference to the victim's age whatsoever. By contrast, CR § 11-303(b)(1), a more serious offense, specifically prohibits violation of subsection (a) involving a victim who is a minor. CR § 11-303(b)(1) expressly forbids human trafficking of children. That offense is a felony with a maximum sentence of twenty-five years' imprisonment, a $15,000 fine, or both. See CR § 11-303(c)(2).

CP § 11-701(p)(2) defines a "Tier II sex offender" as a person who has been convicted of conspiring to commit, attempting to commit, or committing a violation of CR § 11-303 where "the intended prostitute or victim is a minor[.]" Examining the plain language of CP § 11-701(p)(2) leads to the conclusion that a person is a Tier II sex offender

- 24 -

and required to register pursuant to CP § 11-704(a)(2) where two conditions are satisfied: (1) the person is convicted of violating CR § 11-303; and (2) the intended prostitute or victim is a minor. CP § 11-701(p)(2) does not distinguish between convictions under CR § 11-303(a) and CR § 11-303(b)(1), and it appears that a conviction under either provision may result in a requirement to register if the victim is a minor. We agree with the State that CP § 11-701(p)(2)'s definition of a Tier II sex offender applies to someone who is convicted of violating CR § 11-303(a) where the intended prostitute or victim is a minor. Otherwise, the language "if the intended prostitute or victim is a minor" would be superfluous, because a conviction under CR § 11-303(b)(1), by its very definition, will always involve a victim who is a minor. Put differently, the language in CP § 11-701(p)(2) regarding the victim being a minor is not necessary for a person who is convicted of violating CR § 11-303(b)(1) to be required to register; to have any meaning at all, the language must apply to CR § 11-303(a) and other statutes like it set forth in CP § 11-701(p)(2) that do not require the age of the victim to be proven.

Although we are satisfied that, under CP § 11-701(p)(2), a conviction of either CR § 11-303(a) or CR § 11-303(b)(1) triggers Tier II sex offender status if the victim is a minor, a person is not a Tier II sex offender simply by virtue of a conviction under CR § 11-303(a); there must also be proof that the victim was a minor. What can be gleaned from the plain language of CP § 11-701(p)(2) is that the General Assembly intended Tier II sex offender registration where there was conviction of an identified crime and where the victim was a minor. The plain language of the statute indicates that the General Assembly did not intend registration under CP § 11-701(p)(2) simply because there was a conviction

under CR § 11-303(a).

Here, Rogers pled guilty to, and was convicted of, violating CR § 11-303(a). The victim's age was not established during the prosecutor's recitation of the statement of facts or at any point during the guilty plea proceeding. It was only after Rogers was released from imprisonment that the Department determined that he was required to register as a Tier II sex offender under CP § 11-701(p)(2). Although CP § 11-701(p)(2) sets forth two conditions for someone to qualify as a Tier II sex offender—conviction under CR § 11-303 and the intended prostitute or victim is a minor—the statute does not indicate how a determination is to be made as to whether the victim is a minor if that fact is not established during the underlying criminal proceeding. CP § 11-701(p)(2) does not state whether a determination of the victim's status as a minor is to be made by the trier of fact (either the trial court or a jury), or if, as in this case, the Department may make such a determination. After a thorough review of relevant law, we conclude that the trier of fact, not the Department, must make the determination. As such, the Department did not have the authority in this case to determine that the victim was a minor and to order Rogers to register as a Tier II sex offender. We explain.

Looking at the sex offender registration statutes and regulations reveals that there is no explicit delegation anywhere authorizing the Department to make such a determination, and we know of no case in which this Court has recognized that the Department has such authority. Absent an express delegation of authority to the Department to make such a determination, we decline to read into the statutes and regulations the authority to permit the Department to take the action.

- 26 -

At oral argument, the Assistant Attorney General acknowledged that there is no explicit statutory delegation of authority to the Department to make a determination as to a victim's age, but argued that, because CP § 11-701(p)(2) requires a conviction and that the victim be a minor, and because the statutes and regulations require that the Registry be maintained, the Department is permitted to make such a determination. Without dispute, the Department is required to "keep a central registry of registrants and a listing of juvenile sex offenders[,]" CP § 11-713(2), and has various attendant responsibilities. Nothing in the plain language of the statutes themselves, however, provides the Department with the ability to determine, or even a process for determining, a fact necessary for placement on the Registry. The regulations that were promulgated by the Department are likewise unavailing. Under COMAR 12.06.01.08A, the Sex Offender Registry Unit is required to maintain the Registry, "[d]etermine if a registrant should be placed in an under investigation or absconder status[,]" "[c]alculate terms of registration[,]" and "[a]uthorize termination of registration." Although the Sex Offender Registry Unit may determine whether a registrant should be placed in an "under investigation or absconder" status, the Unit is not authorized to determine facts necessary to place a person on the Registry in the first instance.

To allow the Department, the Sex Offender Registry Unit, or some person or entity other than the trier of fact to determine a fact necessary for placement on the Registry would lead to an incongruous result for those convicted of violating CR § 11-303(b)(1) and those convicted of violating CR § 11-303(a). A conviction under CR § 11-303(b)(1) would involve proof of a victim's age as determined by the trier of fact beyond a reasonable doubt

- 27 -

because the victim's age is an element of the offense, and that person would subsequently be ordered to register as a Tier II sex offender. Whereas, placement on the Registry for a conviction under CR § 11-303(a) would involve proof of one of the various modes of human trafficking, but no proof of the victim's age would be required whatsoever by any standard of proof before the trier of fact. Yet, that person would be placed on the Registry if the Department determined post hoc, by whatever process it deemed appropriate, that the victim was a minor. If the Department were permitted to make such a finding, that finding could be made without notice and non-publicly, and would not necessarily be required to meet any particular standard of proof, such as proof beyond a reasonable doubt, by clear and convincing evidence, or by a preponderance of the evidence.

It would be difficult to conceive that the General Assembly intended placement on the Registry for those convicted under CR § 11-303(a) to be determined by an entity different than the trier of fact, in a different manner, and through use of an unknown standard of proof different than that used for those convicted under CR § 11-303(b)(1). Such a result would be illogical. Allowing such a determination would lead to the circumstance presented here, where it is incumbent on the defendant to seek relief from the Department's finding, after the criminal proceeding has concluded, without knowing how the Department reached its conclusion. As in this case (where Rogers requested declaratory judgment), the defendant would bear the burden of establishing that placement on the Registry was erroneous. A defendant generally does not have the burden of proof—*i.e.*, the requirement to prove—that punitive or regulatory actions taken by the State against him or her were unwarranted. Generally, the State must prove conduct warranting such

action. Permitting the Department to determine in a closed-door fashion that the defendant is required to register and causing the defendant to challenge the determination would turn reasonableness on its head.

We are cognizant that not all of the statutes referenced in CP § 11-701(p)(2) have as an element of the offense that the victim be a certain age. For some offenses, including human trafficking under CR § 11-303(a), there must be additional proof that the intended prostitute or victim was a minor for Tier II sex offender registration to be required. For example, CR § 11-306(a) prohibits knowingly engaging in prostitution or maintaining or operating a building for prostitution, and does not require as an element of the offense proof as to the victim's age. Simply because some of the statutes do not have as an element of the offense that the victim be a minor (or some other certain age) does not mean that the General Assembly intended that a determination of the victim's age be made outside of the underlying criminal proceeding. The circumstance that some offenses require proof of the victim's age as an element and some do not does not resolve the question of the process for making a determination under CP § 11-701(p)(2) that the victim is a minor, where the victim's age is not an element of the offense. That there are several statutes referenced by CP § 11-701(p)(2)—some of which require proof of the victim's age as an element and some that do not—does not mean that the General Assembly intended for the Department to make the determination. Based on principles of fairness, it would make sense that the trier of fact—not the Department—must determine the facts necessary for placement on the Registry.

Our conclusion is supported by the numerous cases in which trial courts—not the

Department—ordered defendants to register as sex offenders.  See, e.g., Duran, 407 Md. at 534, 967 A.2d at 185; Cain, 386 Md. at 326, 872 A.2d at 684-85; Nick H., 224 Md. App. at 673, 123 A.3d at 232.  Although arising in a different context, Cain, 386 Md. at 336, 338, 872 A.2d at 690, 692, and Duran, 407 Md. at 547-48, 553-54, 967 A.2d at 192-93, 196-97, stand for the principle that determination of who is an "offender" for registration purposes—or, in this case, who is a Tier II sex offender—is controlled by the language of the statute at issue.  To be a Tier II sex offender, CP § 11-701(p)(2) requires both a conviction of CR § 11-303 and that the intended prostitute or victim be a minor.  Just as a finding of guilt is made by a trier of fact, absent any indication whatsoever by the statutes' plain language that the Department is authorized to determine facts necessary for placement on the Registry, we conclude that such facts must be determined by the trier of fact.  Having determined that the Department is not authorized to find facts necessary for placement on the Registry, we next address at what point the trier of fact must make such a determination and the required standard of proof.

## II.

### The Parties' Contentions

On brief, Rogers contends that the victim's age must be found by the trier of fact beyond a reasonable doubt before sentencing, not by the Registry's manager at some point after conviction.  Rogers asserts that this Court has determined that sex offender registration is punishment equivalent to imposing an additional sanction for a defendant's crime.  At oral argument, surprisingly, though, in response to questions from the Court, Rogers's counsel allowed that the trial court could make a determination beyond a

reasonable doubt about the victim's age at any point within the context of the criminal case, so long as the determination is made before sentence is imposed.

The State responds that this Court has previously concluded that sex offender registration is not intended as punishment, but instead is intended as a regulatory requirement. As such, the State argues that the victim's age may be determined by the Department by a preponderance of the evidence, not beyond a reasonable doubt, and after conclusion of the court proceedings.

**Relevant Law**

In Young v. State, 370 Md. 686, 690, 806 A.2d 233, 235 (2002), this Court examined an earlier version of the Maryland sex offender registration statute in the context of due process rights. We determined that "sex offender registration [did] not constitute punishment in the constitutional sense[.]" Id. at 690, 806 A.2d at 235. In so determining, we applied the "intent-effects" test, "a two-part inquiry whether (1) the legislature intended the sanction to be punitive, and (2) the sanction is so punitive in effect as to prevent the court from legitimately viewing it as regulatory or civil in nature, despite the legislature's intent." Id. at 711, 706-07, 806 A.2d at 248, 245. As to the legislative intent behind the sex offender registration statutes, we noted that, as enacted, the statute at issue contained no express statement of purposes, but "the plain language and overall design . . . clearly indicate[d] that it was not intended as punishment, but rather was intended as a regulatory requirement aimed at protection of the public." Id. at 712, 806 A.2d at 248. The Court stated that the General Assembly did not intend "registration or notification as a device to punish convicted sex offenders" and did not intend "to stigmatize or shame sex offenders."

- 31 -

Id. at 712, 806 A.2d at 248.

As to whether there was clear proof that the statute was so punitive, either in purpose or effect, that its punitive nature overrode the remedial purpose, this Court looked at the following factors derived from Kennedy v. Mendoza-Martinez, 372 U.S. 144, 168-69 (1963):

> (1) whether the sanction involves an affirmative disability or restraint; (2) whether it has historically been regarded as a punishment; (3) whether it comes into play only on a finding of *scienter*; (4) whether its operation will promote the traditional aims of punishment—retribution and deterrence; (5) whether the behavior to which it applies is already a crime; (6) whether it lacks an alternative purpose to which it rationally may be connected; and (7), if such alternative does exist, whether the statute appears excessive in relation to it.

Young, 370 Md. at 713, 698, 806 A.2d at 249, 240. We observed that "sex offender registration imposes [] affirmative disabilities on registrants, particularly in light of the community notification provisions of [the statute]." Id. at 713, 806 A.2d at 249. We noted that "[b]eing labeled as a sex[] offender within the community can be highly stigmatizing and can carry the potential for social ostracism." Id. at 713, 806 A.2d at 249. Nevertheless, we "conclude[ed] that the burden [was] not so unreasonable, in light of the statute's remedial aims, that it converts the statute into a punitive one." Id. at 713, 806 A.2d at 249. We also noted that the statute applied to past criminal conduct, implicating the fifth factor. See id. at 714, 806 A.2d at 249. We ultimately concluded that the statute was "not so punitive a statute in its effect that its application defeat[ed] the [General Assembly]'s remedial intent." Id. at 714, 806 A.2d at 250. And, we stated that "[s]ex offender registration traditionally ha[d] not been regarded as punishment." Id. at 714, 806 A.2d at

250. We observed that the statute had no *scienter* requirement, possibly promoted deterrence, had a legitimate purpose other than punishment, and was not excessive in relation to its remedial purpose. See id. at 715, 806 A.2d at 250.

More than a decade later, in Doe v. Dep't of Pub. Safety and Corr. Servs., 430 Md. 535, 537, 62 A.3d 123, 124 (2013) ("Doe I"), a plurality of this Court concluded that the petitioner could not be compelled to register as a sex offender, explaining:

> During the 1983-84 school year, at the time of [the p]etitioner's commission of the sex offense mentioned herein, the Maryland sex offender registration statute did not exist. The General Assembly enacted the sex offender registration statute in 1995. As a result of amendments to that statute in 2009 and 2010, [the p]etitioner is now required to register as a sex offender. We shall hold that requiring [the p]etitioner to register as a result of the 2009 and 2010 amendments violates the prohibition against *ex post facto* laws contained in Article 17 of the Maryland Declaration of Rights. Pursuant to our determination that [the p]etitioner may not be compelled to register, his name and likeness shall be removed from the Maryland Sex Offender Registry.

The plurality determined that "application of the sex offender registration statute to [the p]etitioner in 2009 [was] the equivalent of imposing a new criminal sanction for [the p]etitioner's prior commission of sex crime in the 1980s." Id. at 561, 62 A.3d at 138. In the plurality's view, placement on the Registry essentially had the same effect as placing the petitioner on probation, thereby "effectively impos[ing] on him an additional criminal sanction." Id. at 562, 62 A.3d at 139. The plurality explained:

> [The p]etitioner testified that under threat of arrest and incarceration he was required to register in 2009. [The p]etitioner currently must report in person to law enforcement every three months, give notice to law enforcement of his address and any changes of address, and notify law enforcement before being away from his home for more than seven days. Furthermore, he must disclose to the State a significant amount of information, some of which is highly personal, including: his employment

address; information about his conviction; his [S]ocial [S]ecurity number; his email address and computer log-in names; information about vehicles he often uses, including those not owned by him; his finger[]prints and palm prints; all identifying factors, including a physical description, and an updated digital image of himself. . . . If [the p]etitioner fails to comply with these requirements, he faces terms of imprisonment, depending on the violation, of up to three or five years.

Id. at 562, 62 A.3d at 139 (cleaned up). Moreover, "the dissemination of [the p]etitioner's information pursuant to the sex offender registration statute[ was] tantamount to the historical punishment of shaming[,]" and was "punitive for *ex post facto* purposes." Id. at 564, 565, 62 A.3d at 140, 141 (footnote omitted).

In a concurring opinion, the Honorable Glenn T. Harrell, Jr. discussed the various amendments to the Maryland Sex Offender Registration Act that had occurred since 2009, stating:

Since 2009, several amendments to the Maryland Sex Offender Registration Act have been adopted, including, but not limited to: (1) adding juvenile sex offenders to the list of those who must register; (2) requiring registration statements to include a list of aliases, electronic email addresses, computer screen names, or any name by which the registrant had been legally known; (3) requiring tier III offenders (such as Doe) to register in person every three months for life; (4) requiring that registrants provide three days['] notice after changing addresses; (5) ordering registrants to notify law enforcement, prior to the relocation, when the registrant obtains a temporary residence or changes the location where the registrant resides or "habitually lives" for more than 5 days; (6) requiring homeless registrants to register in person with the local law enforcement in each county where the registrant habitually lives; (7) publicize registration information on the Internet; and (8) granting the Department [] and law enforcement the discretion to provide notice of a registration statement or a registrant's change of address to whomever they deem necessary so as to protect the public from the registrant.

Id. at 569-70, 62 A.3d at 143-44 (Harrell, J., concurring) (citations omitted). Judge Harrell observed that "significant revisions to the Maryland registration statute ha[d] occurred

since the *Young* [C]ourt reviewed the statute in 2002." Id. at 571, 62 A.3d at 145 (Harrell, J., concurring). For example, Judge Harrell noted that, beyond disseminating basic registry information about registrants, "the Maryland registry web site allows any person to post comments, that are available for the public to view, below a registrant's profile." Id. at 572, 62 A.3d at 145 (Harrell, J., concurring). Judge Harrell observed that "in-person registration requirements may involve punitive restraints." Id. at 572, 62 A.3d at 145 (Harrell, J., concurring). Judge Harrell stated that "dissemination of non-public and sensitive information about registrants" presented the risk of being stigmatizing, and noted that registrants were required "to inform the State on every change of location, including any place in which a registrant habitually lives or stays for more than five days, and . . . the Department or law enforcement [were permitted] to share the information with anyone when [] necessary to do so to protect the public." Id. at 572-73, 62 A.3d at 145 (Harrell, J., concurring) (citations omitted). As to recidivism, Judge Harrell stated that research since 2002 demonstrated that, "[a]pplying such a broad-reaching statute like Maryland's to any qualifying sex offender without particularized determinations of recidivism may undermine the law's intent to prevent the repetition of sex offenses. Indeed, recent research reports that broad-reaching sex offender registration and notification laws do not reduce recidivism by sex offenders." Id. at 573, 62 A.3d at 146 (Harrell, J., concurring) (citations omitted).

In a separate concurring opinion, the Honorable Robert N. McDonald, joined by the Honorable Sally D. Adkins, stated that "the cumulative effect of the 2009 and 2010 amendments of the State's sex offender registration law took [the] law across the line from

civil regulation to an element of the punishment of offenders." Id. at 578, 62 A.3d at 148

(McDonald, J., concurring) (citations omitted).

Similarly, in Quispe del Pino v. Md. Dep't of Pub. Safety and Corr. Servs., 222 Md.

App. 44, 63, 112 A.3d 522, 533 (2015), in the *ex post facto* context, the Court of Special

Appeals concluded:

> [T]he retroactive application of [the Maryland Sex Offender Registration
> Act] to [the] appellant by the 2010 amendment imposed additional
> punishment on [the] appellant for criminal conduct that occurred prior to the
> existence of the amended statute, by extending the term of his required
> registration from ten years to twenty-five years. Thus the 2010 amendment,
> as applied to [the] appellant, is unconstitutional under the prohibition against
> *ex post facto* laws contained in Article 17 of the Maryland Declaration of
> Rights.

In Nick H., 224 Md. App. at 673, 689, 123 A.3d at 232, 241, a case where a juvenile

court ordered the appellant to register as a sex offender, the Court of Special Appeals held,

in pertinent part, that the juvenile court properly ordered the appellant to register and that

the retroactive application of the Maryland Sex Offender Registration Act as applied to the

appellant was not punishment and was not a violation of the prohibition against *ex post*

*facto* laws. In that case, the juvenile court conducted a hearing to determine whether the

appellant was at a significant risk of re-offending and "concluded, based on clear and

convincing evidence, that [the] appellant was at a significant risk of re-offending, and thus

ordered him to register as a sex offender[.]" Id. at 673, 123 A.3d at 232. The Court of

Special Appeals applied the intent-effects test and examined the various Mendoza-

Martinez factors, see Nick H., 224 Md. App. at 689-705, 123 A.3d at 241-50, concluding:

> [A]lthough the requirement of registration imposes an affirmative disability
> on [the] appellant, has been regarded historically as punishment, carries the

element of *scienter*, and applies to behavior that is criminal in nature, these disadvantages are outweighed by the public safety purpose of [the Maryland Sex Offender Registration Act] and the process afforded juvenile sex offenders both before and after being ordered to register. [The Act] requires an individualized assessment of a juvenile sex offender, under a clear and convincing evidence standard, before placement on the sex offender registry, and the opportunity to seek a reduction in the term of registration. By contrast, [the Act] requires all adults convicted of certain sexual offenses to register as sex offenders for a specified term regardless of their continuing threat to society. Therefore, the placement of some juvenile sex offenders on the sex offender register is explicitly tied to the regulatory purpose of sex offender registration.

Id. at 705, 123 A.3d at 250-51.

In Apprendi v. New Jersey, 530 U.S. 466, 490 (2000), the United States Supreme Court held that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." In that case, a New Jersey statute classified the possession of a firearm for an unlawful purpose as a second-degree offense punishable by between five years' and ten years' imprisonment. See id. at 468. A separate New Jersey statute, which was a hate crime law, provided for an extended term of imprisonment if the trial court found by a preponderance of the evidence that the defendant committed the crime "with a purpose to intimidate an individual or group of individuals due to race, color, gender, handicap, religion, sexual orientation[,] or ethnicity[.]" Id. at 468-69 (cleaned up). Under the hate crime law, the extended term of imprisonment for second-degree offenses was between ten years' and twenty years' imprisonment. See id. at 469. The Supreme Court explained that the New Jersey statutory scheme consisted of the following:

> [A] jury [is allowed] to convict a defendant of a second-degree offense based on its finding beyond a reasonable doubt that [the defendant] unlawfully

possessed a prohibited weapon; after a subsequent and separate proceeding, it then allows a judge to impose punishment identical to that New Jersey provides for crimes of the first degree, based upon the judge's finding, by a preponderance of the evidence, that the defendant's purpose for unlawfully possessing the weapon was to intimidate his [or her] victim on the basis of a particular characteristic the victim possessed.

Id. at 491 (cleaned up). Applying its holding, the Supreme Court concluded that the New Jersey statutory scheme could not stand. See id. at 491-92.

**Analysis**

Here, we hold that applying the intent-effects test and the Mendoza-Martinez factors leads to the conclusion that sex offender registration under the current statutory scheme is sufficiently punitive, *i.e.,* serving as more than a mere civil regulation, to require determination of a fact necessary for placement on the Registry—such as the victim's age—be made beyond a reasonable doubt by the trier of fact during the adjudicatory phase of the criminal proceeding prior to sentencing. Although whether placement on the Registry is punitive has not been examined in the context of a conviction for CR § 11-303(a), placement on the Registry is placement on the Registry, regardless of the reason or the conviction that required sex offender registration. We are satisfied that establishment of the victim's age and placing a defendant who is convicted of violating CR § 11-303(a) on the Registry essentially increases the punishment or penalty for that crime, and that the determination of the victim's age must be submitted to the trier of fact and proven beyond a reasonable doubt. Cf. Apprendi, 530 U.S. at 490 ("Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum should be submitted to a jury, and proved beyond a reasonable doubt."); see also

Blakely v. Washington, 542 U.S. 296, 303, 313 (2004) ("[T]he 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant. . . . As *Apprendi* held, every defendant has the right to insist that the prosecutor prove to a jury all facts legally essential to the punishment." (Cleaned up.)).

We begin our inquiry with the intent-effects test, and whether the General Assembly intended sex offender registration to be punitive and whether sex offender registration is so punitive in effect that it cannot be viewed simply as regulatory or civil in nature, despite the General Assembly's intent. In Young, 370 Md. at 712, 806 A.2d at 248, we stated "that the plain language and overall design of" the sex offender registration statutes demonstrated that sex offender registration "was not intended as punishment, but rather was intended as a regulatory requirement aimed at protection of the public." At least as originally enacted, the General Assembly did not intend "registration or notification as a device to punish convicted sex offenders" or as a method "to stigmatize or shame sex offenders." Id. at 712, 806 A.2d at 248. That the General Assembly may have intended a non-punitive regulatory scheme is not dispositive; we must determine whether the scheme is so punitive in effect as to negate that intent. We determine that the cumulative effects of the Maryland Sex Offender Registration Act are increasingly punitive, *i.e.*, that placement on the Registry is progressively more punitive, and that case law has begun to recognize as much.

Application of the Mendoza-Martinez factors is instructive. As to the first factor, whether sex offender registration in Maryland involves an affirmative disability or

restraint, we conclude that it does. Even in Young, 370 Md. at 713, 806 A.2d at 249, we recognized that sex offender registration imposes affirmative disabilities on registrants, especially given the community notification provisions, and that being labeled as a sex offender can be highly stigmatizing and lead to social ostracism. Moreover, from our perspective, the in-person registration requirements involve punitive restraints. For example, a Tier II sex offender is required to register in person every six months with local law enforcement and the digital image for registration must also be updated every six months. See CP § 11-707(a)(1)(i), (ii). Although in-person registration does not constitute a physical restraint on a registrant, this requirement cannot be said to be a minor one, given that it occurs every six months, in the case of Tier I and Tier II sex offenders, and every three months, in the case of Tier III sex offenders and sexually violent predators. See CP § 11-707(a)(1)(i), (a)(2)(i), (a)(3)(i).

A Tier II sex offender is required to register for twenty-five years, a period of time that may long exceed the term of imprisonment imposed. See CP § 11-707(a)(4)(ii). Indeed, the maximum penalty for a violation of CR § 11-303(a) is ten years' imprisonment, a $5,000 fine, or both. See CR § 11-303(c)(1)(i). As part of the registration statement, a registrant is tasked with providing a plethora of personal information, including the registrant's complete name and every address and place where the registrant resides or habitually lives, the names and addresses of all of the registrant's employers, a list of electronic mail addresses, computer log-in or screen names or identities, instant-messaging identities, and electronic chat room identities the registrant has used, the registrant's Social Security number, all identifying factors, including a physical description, information for

any vehicle owned or regularly operated by the registrant and the locations where the vehicles are kept, and the registrant's fingerprints and palm prints. See CP § 11-706(a). In Young, 370 Md. at 713, 806 A.2d at 249, this Court acknowledged that a registration statement "may include documentation of highly personal, confidential, and ordinarily nonpublic information such as treatment received for a mental abnormality or personality disorder." (Citation omitted). See also CP § 11-706(b). Knowingly failing to provide any of the information required to be included in a registration statement is, for a first offense, a misdemeanor punishable by up to three years' imprisonment, a $5,000 fine, or both, and, for a second or subsequent offense, a felony punishable by up to five years' imprisonment, a $10,000 fine, or both. See CP § 11-721(a), (b).

Significantly, information about sex offender registrants is publicly available and required to be posted on the Internet. See CP § 11-717(a)(1), (b). The Internet has increased dissemination of the personal information of sex offenders, and anyone, at any time and for any reason, can look up a current listing of a registrant. Public availability and dissemination of sex offender registration expose sex offenders to ostracism, and may cause lost employment opportunities, housing discrimination, threats, and violence. In sum, we conclude that this factor—whether sex offender registration in Maryland involves an affirmative disability or restraint—weighs heavily in favor of registration having a punitive effect.[6]

---

[6]Similarly, in Sabisch, 466 Md. at 332-33, 220 A.3d at 275, in evaluating eligibility to petition for habeas corpus relief, this Court concluded that a person on probation with conditions that significantly restrain the person's lawful liberty is eligible to seek habeas

- 41 -

As to the second factor, whether sex offender registration has historically been regarded as punishment, although in Young, 370 Md. at 714, 806 A.2d at 250, we stated that "[s]ex offender registration traditionally ha[d] not been regarded as punishment[,]" more recently, in Doe I, 430 Md. at 561, 564, 52 A.3d at 139, 140, a plurality of this Court observed that requiring the petitioner to register had the same effect on his life as placing him on probation, which is a form of a criminal sanction, and that dissemination of the petitioner's information was tantamount to the historical punishment of shaming. In Nick H., 224 Md. App. at 694, 123 A.3d at 244, the Court of Special Appeals concluded that publishing information about former juvenile sex offenders on a public website created an enduring stigma of their misconduct akin to shaming. We agree with this reasoning and conclude that registration has developed in the direction of being punitive.

As to whether sex offender registration depends on a finding of *scienter*, unlike juvenile sex offender registration, see Nick H., id. at 694-95, 123 A.3d at 244-45, adult sex offender registration requirements "are triggered when the offender is released into the community" and "appl[y] to individuals convicted of any of the enumerated offenses, without regard to the offender's state of mind[,]" Young, 370 Md. at 715, 806 A.2d at 250.

As to whether sex offender registration operates to promote the traditional aims of punishment—retribution and deterrence—in Young, id. at 715, 806 A.2d at 250, we observed that, because the sex offender registrations statutes were enacted to protect the public, registration could not be characterized as retribution. Nevertheless, we allowed

corpus relief. Hence, this Court recently recognized that non-physical restraints can significantly impair liberty.

- 42 -

that the statutes possibly "promote[d] deterrence." Id. at 715, 806 A.2d at 250. Black's Law Dictionary defines "deterrence" as "[t]he act or process of discouraging certain behavior, particularly by fear; esp[ecially], as a goal of criminal law, the prevention of criminal behavior by fear of punishment." *Deterrence*, Black's Law Dictionary (11th ed. 2019). The possibility of sex offender registration may very well have a deterrent effect on some individuals who would otherwise engage in criminal behavior but for the fear, or threat, of registration. And, as the Court of Special Appeals recognized, the "requirements of reporting, notification, and disclosure to law enforcement serve a deterrent function by continually reminding the registrant of the ever-present interest of law enforcement in the registrant's behavior[,]" and "the public dissemination of offenders' information is similar to shaming, and thus acts to deter past offenders from re-offending, and may deter future offenders who are aware of the public consequences of sexual offenses." Nick H., 224 Md. App. at 695-96, 123 A.3d at 245 (cleaned up). We conclude that this factor weighs in favor of registration being punitive.

As to whether the behavior to which registration applies is already a crime, registration "clearly applies to past criminal conduct[.]" Young, 370 Md. at 714, 806 A.2d at 249. To be sure, "[t]he fact that the statute is triggered by a criminal conviction does not undermine the [General Assembly]'s intent to create a sex offender registry to aid in the civil purpose of tracking the location of known sex offenders." Id. at 714, 806 A.2d at 249. As such, this factor weighs equally in favor of registration being punitive in nature and serving a civil purpose.

As to whether registration lacks an alternative purpose to which it rationally may be

connected, it is clear that the registration statutes have a purpose other than punishment—to protect the public. In Young, id. at 715, 806 A.2d at 250, we observed that the registration statutes have "strong remedial aspects and serve[] the important nonpunitive goal of alerting law enforcement and the community to the presence of sexual predators who may reoffend." Finally, we consider whether the sanction of registration is excessive in relation to its remedial purpose. From our perspective, given that the provisions of the sex offender registration statutes protect the public from sex offenders and the registration requirements apply only to those who qualify as sex offenders under the statutes, see id. at 715, 806 A.2d at 250, it cannot be said that the sanction of registration is excessive. On balance, however, an examination of all of the factors weighs in favor of determining that the cumulative effect of the registration statutes is punitive in nature, and, as such, sex offender registration may be considered akin to punishment. Because establishment of the victim's age as a minor would necessitate placement on the Registry for a defendant convicted of violating CR § 11-303(a), effectively subjecting the defendant to additional punishment for the crime, it is logical that determination of the victim's age be submitted to the trier of fact and proven beyond a reasonable doubt.

In our view, whether placement on the Registry is viewed as punitive, as we determine, or as regulatory, a defendant should be entitled to process where a fact necessary for placement on the Registry, *e.g.*, the victim's age, is at issue. There is no statute, rule, or case that allows a trial court to make a finding of fact beyond a reasonable doubt (or by a lesser standard of proof) at sentencing after a jury trial (or a bench trial, for that matter), or where the defendant has pled guilty and agreed to a statement of facts. Absent an

amendment of CP § 11-701(p)(2) or another statute enacted by the General Assembly, consistent with the Supreme Court's holding in <u>Apprendi</u>, to provide for some other process, we conclude that, to require sex offender registration, the facts of the case adduced during the adjudicatory phase of the criminal proceeding must establish the age of the victim beyond a reasonable doubt.

To establish the victim's age during the adjudicatory phase beyond a reasonable doubt in a case in which a defendant pleads guilty, the State could pursue an agreed statement of facts that establishes the victim's age. Stated otherwise, the defendant and the State would enter into a plea agreement where the statement of facts establishes the victim's age. Under Maryland Rule 4-243(c)(1), after a plea agreement is presented to the trial court, the trial court "may then accept or reject the plea and, if accepted, may approve the agreement or defer decision as to its approval or rejection until after such pre-sentence proceedings and investigation as the [trial court] directs." Aside from accepting or rejecting the plea, the trial court is not authorized to make additional findings of fact outside of those in the plea agreement reached between the defendant and the prosecutor, but may accept the facts that are presented during the plea as the basis for finding a defendant guilty beyond a reasonable doubt. The premise of a typical guilty plea is that a defendant agrees with the facts as presented by the State, not that the trial court would make a finding that goes against the defendant, unless there is an <u>Alford</u> plea and the parties have agreed to

such a plea.[7]  Under the process set forth above, where the defendant agrees to plead guilty to violating what is now CR § 3-1102(a), and the State wants to pursue sex offender registration, the State would include the victim's age in the statement of facts.  If the defendant does not want to acknowledge that the victim was a minor, then the defendant would not agree with the statement of facts, and, presumably, would not plead guilty.

In the event of a jury trial, where the State seeks to have the defendant ordered to register as a Tier II sex offender under CP § 11-701(p)(2) and the age of the victim is not an element of the offense, determination of the victim's age beyond a reasonable doubt could be achieved by a special verdict question submitted to the jury.[8]  To be sure, a defendant may object to the use of a special verdict question regarding the victim's age as prejudicial, especially where the defendant is charged with other offenses that do not require proof of the victim's age, as some of the offenses referenced by CP § 11-701(p)(2) do not.  In most jury trials, though, witnesses and victims are generally asked to provide

---

[7]In Jackson v. State, 448 Md. 387, 391 n.3, 139 A.3d 976, 978 n.3 (2016), we explained that an Alford plea—derived from North Carolina v. Alford, 400 U.S. 25 (1970)—is a plea

> in which the individual retains the right to appellate review of evidence subject to a suppression motion but avoids going through the time and expense of a full trial.  By pleading not guilty and agreeing to the proffer of stipulated evidence or an agreed statement of facts, an individual, like with a guilty plea, waives a jury trial and the right to confront witnesses but retains appellate review of the suppression decision.

(Cleaned up).

[8]In State v. Adams, 406 Md. 240, 294, 958 A.2d 295, 328 (2008), this Court stated that special verdicts are appropriate in criminal as well as civil cases, and that "[a] special verdict is a proper method to create an unambiguous record for appeal."

- 46 -

their age when testifying, so a victim's age is usually not a secret. As such, as another option, where there is genuinely no dispute about a victim's age, a defendant could agree or stipulate, outside of the presence of the jury, to the age of the victim if the defendant believes inclusion of a question on a verdict sheet would be prejudicial.

Alternatively, in lieu of a special verdict question or the defendant's stipulation outside of the jury's presence, the question of the victim's age could be handled through sequential jury determinations, whereby the jury would first determine whether the defendant was guilty of a violation of CR § 11-303(a) (now CR § 3-1102(a)), and, if so, next determine whether the victim was a minor. This would eliminate any claim of prejudice before the jury by the defendant. In Galloway v. State, 371 Md. 379, 419, 809 A.2d 653, 677 (2002), in a concurring opinion, the Honorable Alan M. Wilner observed that, with respect to a case in which a defendant is charged with possession of a firearm by a person previously convicted of a crime and another offense not requiring proof that the person was previously convicted of a crime, a trial court could "take the intermediate step . . . of bifurcating the [criminal in possession] charge—allowing the jury to consider only the current substantive charges first, and then, after it renders a verdict on those charges, having that same jury hear the additional evidence and then consider the [criminal in possession] charge." (Wilner, J., concurring) (citation omitted). In other words, the jury would make sequential determinations of the charges.[9]

At bottom, we conclude that a fact necessary for placement on the Registry, such as

---

[9]At a bench trial, the trial court, of course, could be asked to make the requisite finding during the adjudicatory phase beyond a reasonable doubt.

- 47 -

the victim's age, must be determined by the trier of fact beyond a reasonable doubt, during the adjudicatory phase of the criminal proceeding, prior to sentencing. In this case, that did not occur. Instead, Rogers pled guilty to violating CR § 11-303(a) and the victim's age was not established during the agreed statement of facts or at any point during the guilty plea proceeding. Without being authorized by statute, regulation, or case law, through use of an unknown standard of proof, and after the underlying criminal proceeding had concluded and Rogers had served a sentence of imprisonment, the Department determined that the victim was a minor and ordered Rogers to register as a Tier II sex offender. This action was taken without notice to Rogers or permitting him to be heard in any respect. Placement on the Registry is no less punitive or consequential for those convicted under CR § 11-303(a) (now CR § 3-1102(a)), as opposed to those convicted under CR § 11-303(b)(1) (now CR § 3-1102(b)(1)), and, absent amendment of the statutes, one group of people should not be subject to placement on the Registry through an unidentified process and then required to challenge that placement. The circuit court correctly granted summary judgment in Rogers's favor, and properly determined that Rogers was not required to register and that his name was to be removed from the Registry. We reverse the judgment of the Court of Special Appeals.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED. CASE REMANDED TO THAT COURT WITH INSTRUCTION TO AFFIRM THE JUDGMENT OF THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY. RESPONDENTS TO PAY COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS.**

Circuit Court for Anne Arundel County
Case No. C-02-CV-17-000296
Argued: January 10, 2020

IN THE COURT OF APPEALS

OF MARYLAND

No. 32

September Term, 2019
_____

JIMMIE ROGERS

v.

STATE OF MARYLAND, ET AL.
_____

Barbera, C.J.
McDonald
Watts
Hotten
Getty
Booth
Biran,

JJ.
_____

Dissenting Opinion by Biran, J.,
which Barbera, C.J., and Hotten, J., join.
_____

Filed: March 31, 2020

Respectfully, I dissent.

In my view, the Majority misinterprets the Maryland Sex Offender Registration Act ("MSORA") to preclude the Department of Public Safety and Correctional Services (the "Department") from determining the existence of a fact that triggers sex offender registration for Petitioner Jimmie Rogers, where that fact was not necessary to a finding of guilt in Rogers's prior criminal case, and therefore was not proven or admitted in that proceeding. I would hold that the General Assembly impliedly delegated the power to make such a determination to the Department, subject to judicial review in an administrative mandamus action or (as in this case) a declaratory judgment action filed by a person who has been directed to register as a sex offender.

Rogers did not preserve his constitutional arguments for appellate review, and therefore I would not reach them. On the merits of those claims, I would hold that the Department's determination that Rogers's victim (M.H.) was a minor does not violate the separation of powers mandated under Article VIII of the Maryland Declaration of Rights. As to Rogers's Sixth Amendment argument, I would conclude that Maryland's sex offender registration regime is not punitive, but rather achieves the remedial purpose for which the General Assembly intended it: to protect the public. Alternatively, even if sex offender registration in Maryland is considered effectively to be punitive, registration does not increase a person's punishment for a criminal offense beyond the otherwise applicable statutory maximum for that offense, within the meaning of *Apprendi v. New Jersey,* 530 U.S. 466 (2000). Thus, I would hold that the trier of fact in a criminal case is not required to determine beyond a reasonable doubt the existence of any fact that, while not an element

of the offense, is a prerequisite to registration under MSORA.

In concluding otherwise, the Majority creates a new, unprecedented, and ill-advised procedure that Maryland judges and juries must now try to carry out in criminal cases, with the likely result that some Maryland residents whose conduct warrants sex offender registration will not be required to register, and that others, who have previously registered as sex offenders in Maryland without ever disputing their status as such, will now file similar declaratory judgment actions seeking removal from Maryland's Sex Offender Registry. In addition, the Majority's decision is unique among the States, and may well encourage some individuals who are currently registered as sex offenders in other jurisdictions to move to Maryland in the hope that they will be able to avoid registration here. I do not believe the General Assembly intended to make Maryland an outlier when it decided who would qualify as Tier I, Tier II, and Tier III sex offenders under Maryland law. Nor does the Sixth Amendment require this unfortunate result.

Applying the substantial evidence test for review of factual determinations by administrative agencies, I would uphold the Department's finding that M.H. was a minor at the time Rogers committed his human trafficking offense. Accordingly, I would remand this case to the Circuit Court with instructions to enter summary judgment for Respondents and to issue a judgment declaring that Rogers is, and must continue to register as, a Tier II sex offender.

# I

**A Supervising Authority Under MSORA Has the Authority to Determine a Circumstance That Triggers Sex Offender Registration Where That Circumstance Is Not an Element of a Registrant's Criminal Offense.**

Because the age of the victim is not an element of the human trafficking offense to which Rogers pled guilty, it is not surprising that there was neither a proffer by the State nor a finding by the Circuit Court at Rogers's plea hearing that M.H. was a minor at the time of the offense. This left open a gap in the determination whether Rogers would be required to register as a Tier II sex offender. If Rogers's victim was a minor, he would be a Tier II sex offender and therefore obligated to register. If his victim was not a minor, Rogers would not be required to register at all.

The Department subsequently closed this gap with its determination that Rogers's victim was a minor. The Majority holds that the Department lacked the authority to do so, concluding that, in the absence of an express delegation by the General Assembly of the authority to determine the age of a victim in these circumstances, it will not read MSORA, Md. Code Ann., Crim. Proc. (CP) § 11-701, *et seq.* (2001, 2008 Repl. Vol., 2016 Supp.),[1] impliedly to delegate such authority to the Department. Maj. Slip Op. at 26. Contrary to the Majority's conclusion, I believe the General Assembly intended the Supervising Authority (here, the Department[2]) to determine the age of a victim for purposes of sex

---

[1]    Unless otherwise noted, I refer to this version of CP § 11-701 throughout this opinion.

[2]    A "Supervising Authority" under MSORA is "the agency or person that is responsible for collecting the information for the initial registration" of a particular sex

offender registration, where that fact is not an element of a potential registrant's offense of conviction.

Whether the General Assembly impliedly granted the Supervising Authority this authority is a question of law, and "turns on the General Assembly's intent in empowering the agency and the statutory scheme under which the agency acts." *Thanner Enterprises, LLC v. Baltimore Cty.,* 414 Md. 265, 279 (2010) (citing *Bd. of Liquor License Comm'rs for Baltimore City v. Hollywood Prods., Inc.*, 344 Md. 2, 11 (1996) (cleaned up)). When the General Assembly has bestowed upon an agency a broad delegation of power, this Court liberally construes the scope of that agency's implied powers. *Id.* In addition, "[a]dministrative agencies possess an 'expertise' and, thus, have a greater ability to evaluate and determine the matters and issues that regularly arise, or can be expected to be presented, in the field in which they operate or in connection with the statute that they administer." *Adventist Health Care Inc. v. Maryland Health Care Comm'n*, 392 Md. 103, 119 (2006). "[C]onsiderable weight is due [to] the agency's interpretation and application of the statute it administers and to the agency's interpretation of its own regulations." *Id.*at 121 (cleaned up).

I believe the Majority focuses too narrowly on CP § 11-701(p)(2), which governs whether a person convicted of the criminal offense to which Rogers pled guilty qualifies as a Tier II sex offender. To fully understand the import of the Majority's holding and why

---

offender. CP § 11-701(n). For all individuals who are incarcerated in a correctional facility operated by the Department, the Supervising Authority is the Secretary of the Department. *Id.* § 11-701(n)(1). For ease of reference, I will refer to the Department as Rogers's Supervising Authority.

I believe it is incorrect, it is useful to begin by examining CP § 11-701 in greater detail, as well as other pertinent statutory and regulatory provisions.

## A. Statutory and Regulatory Framework

The General Assembly first enacted a sex offender registration regime for Maryland in 1995. *See* 1995 Md. Laws, Chapter 142. It has amended the statute, now commonly referred to as MSORA, several times in the quarter century that has passed. The Department is the agency charged with maintaining Maryland's Sex Offender Registry. The General Assembly has provided that, "[w]ith advice from the Criminal Justice Information Advisory Board …, the Secretary shall adopt regulations to carry out [MSORA]." CP § 11-720. The Department, in turn, has promulgated regulations that are located in Title 12, Subtitle 6, Chapter 1, of the Code of Maryland Regulations (COMAR). The Department's prefatory regulation states that "[t]he purpose of this chapter is to establish the framework for the sex offender registration process and to specify the duties and responsibilities of a registrant and State and local agencies as established under Criminal Procedure Article, §§11-701-11-721, Annotated Code of Maryland." COMAR 12.06.01.01 (2015).[3]

In many instances, a person is classified as a Tier I, Tier II, or Tier III sex offender if the person is convicted of a particular listed offense, without the necessity of any additional circumstance being present. For example, if a person is convicted of a fourth-degree sex offense under Md. Code Ann., Crim. Law (CR) § 3-308 (2002, 2012 Repl.

---

[3]     I refer to this version of COMAR throughout this opinion.

Vol.),[4] he or she is a Tier I sex offender. CP § 11-701(o)(1). Another example is someone who is convicted of first-degree rape under CR § 3-303; that person is defined as a Tier III sex offender. CP § 11-701(q)(1)(ii). The fact of a conviction for such a listed offense automatically triggers the requirement to register as a sex offender at one of the specified tiers, and there is no need in such an instance for anyone to make a finding about anything that was not necessarily proven at a trial or admitted by the defendant as part of a guilty plea to that offense.

In many other instances, however, to be classified as a Tier I, Tier II, or Tier III sex offender, a defendant must be convicted of a particular listed offense *and* a particular additional circumstance must be present. Several of these instances arise where the victim of the offense for which the defendant was convicted is in a certain age range, but the age of the victim is not an element of the crime:

- CP § 11-701(o)(2) (Tier I sex offender status for a person who has been convicted under CR § 3-902 (visual surveillance with prurient intent), "if the victim is a minor"[5]).

- CP § 11-701(p)(2) (2001, 2018 Repl. Vol., 2019) (Tier II sex offender status for a person who has been convicted under CR § 3-1102 (2002, 2012 Repl. Vol., 2019 Supp.) (sex trafficking),[6] CR § 3-1103 (2002, 2012

---

[4]      Unless otherwise noted, all citations to sections of the Criminal Law Article are to those as set forth in the 2012 Replacement Volume.

[5]      A "minor" is an "individual under the age of 18 years." CR § 1-101(g).

[6]      CR § 3-1102 was previously codified as CR § 11-303. Rogers was convicted of human trafficking under former CR § 11-303(a), a misdemeanor, which does not include the age of the victim as an element of the offense. As the Majority explains, subsection (b)(1) of former CR § 11-303 requires proof that the victim was a minor, is a felony offense, and contains greater maximum penalties than subsection (a) of former CR § 11-303. In

Repl. Vol., 2019 Supp.) (marriage trafficking), CR § 11-303 (2002, 2012 Repl. Vol., 2019 Supp.) (engaging in "assignation," or occupying a building, structure, or conveyance for prostitution or assignation),[7] CR § 11-306 (2002, 2012 Repl. Vol., 2019 Supp.) (soliciting, or offering to procure or solicit, prostitution or assignation), or CR § 11-307 (2002, 2012 Repl. Vol., 2019 Supp.) (additional offenses involving the use of a building, structure, or conveyance for prostitution or assignation), "if the intended prostitute or victim is a minor").

- CP 11-701(p)(3) (Tier II sex offender status for a person who has been convicted under CR § 3-314 (sexual conduct between correctional or juvenile justice employee and inmate or confined child) or CR § 3-603 (sale of a minor) "if the victim is a minor who is at least 14 years old").

- CP § 11-701(q)(1)(iii) (Tier III sex offender status for a person who has been convicted under CR § 3-502 (kidnapping) "if the victim is a minor").

- CP § 11-701(q)(2) (Tier III sex offender status for a person who has been convicted under CR § 3-314 (sexual conduct between correctional or juvenile justice employee and inmate or confined child), CR § 3-503 (child kidnapping), or CR 3-603 (sale of a minor) "if the victim is under the age of 14 years").

- CP § 11-701(q)(3) (Tier III sex offender status for a person who is convicted of conspiring to commit, attempting to commit, or committing the common law offense of false imprisonment, "if the victim is a minor").[8]

_____

2019, the General Assembly renumbered the human trafficking statute as CR § 3-1102 and changed some references in the statute from "human trafficking" to "sex trafficking." At the same time, the General Assembly somewhat confusingly renumbered a prostitution/assignation statute which had been CR § 11-306 as new CR § 11-303. In keeping with the Majority's approach, I will refer to the statute under which Rogers was prosecuted as CR § 11-303, notwithstanding that a different offense is now set forth at § 11-303 of the Criminal Law Article and also is a predicate offense for Tier II sex offender registration "if the intended prostitute or victim is a minor."

[7]    *See* note 6 above.

[8]    A few of the underlying criminal statutes listed in CP §§ 11-701(o), (p), and (q) as qualifying for Tier I, Tier II, or Tier III sex offender status if the victim or other specified person is within a certain age range, can only be violated if the victim or other

Although the age of a victim involved in an offense is the most common additional circumstance that, along with a conviction for an offense, triggers sex offender registration, age is not the only such circumstance that MSORA refers to in defining a Tier I, Tier II, or Tier III sex offender. Other additional circumstances include:

- CP §§ 11-701(o)(3), 11-701(p)(5) & 11-701(q)(5) (Tier I, Tier II, or Tier III sex offender status, respectively, for conviction of a crime committed in a federal, military, tribal, or other jurisdiction that, "if committed in this State, would constitute" one of the Maryland offenses that triggers sex offender registration).

- CP § 11-701(o)(5) (Tier I sex offender status for conviction of certain military offenses that are "similar to" various listed federal offenses).

- CP §§ 11-701(o)(6), 11-701(p)(6) & 11-701(q)(6) (Tier I, Tier II, or Tier III sex offender status, respectively, for conviction of a crime in a court of certain foreign countries that, "if committed in this State, would constitute" one of the crimes listed in CP §§ 11-701(o)(1) through (o)(5), 11-701(p)(1) through (p)(3), or 11-701(q)(1) through (q)(3)).

- CP § 11-701(p)(4) (Tier II sex offender status for conviction of an offense that would require the person to register as a tier I sex offender "after the person was already registered as a tier I sex offender").

- CP § 11-701(q)(1)(v) (Tier III sex offender status for person who has been convicted of the common law offense of sodomy, or of the commission of an unnatural or perverted sexual practice under CR § 3-322, "if the offense was committed with force or threat of force").

- CP § 11-701(q)(4) (Tier III sex offender status for conviction of an offense that would require the person to register as a Tier I or Tier II sex offender "after the person was already registered as a [T]ier II sex offender").

---

person is within that age range. *See, e.g.*, CP § 11-701(o)(2) (Tier I sex offender status for person who violates CR § 11-208 "if the victim is a minor"; CR § 11-208 prohibits possession of a visual representation of a child under 16 engaged in certain sexual acts). The redundancy in a few of the subsections of §§ 11-701(o), (p), and (q) has no bearing on the issues in this case.

Other statutory and regulatory provisions also provide useful context. Under CP § 11-704(a), a person who is a Tier I, Tier II, or Tier III sex offender "shall register with the person's supervising authority." The Department has promulgated a regulation providing that "a registrant shall complete, sign, and date a registration statement form with a supervising authority." COMAR 12.06.01.05(A). If the person required to register was sentenced to a term of imprisonment, the person must register with his or her supervising authority "before the date that the registrant is released." CP § 11-705(b)(1).

For all sex offenders in the State, a registration statement must include, among other things, "a description of the crime for which the registrant was convicted." CP § 11-706(a)(4). The Department has issued regulations that detail the information in the registration statement that must be supplied by the registrant and the Supervising Authority, respectively. COMAR 12.06.01.05(B) & (C). The Department has provided that, "[f]or each crime for which the registrant is required to register," the Supervising Authority must supply certain information:

(a) Name of the crime, including statutory citation if applicable and available;
(b) Date of conviction;
(c) Name of Maryland court and county, or other court and location, where the registrant was convicted;
(d) Date the crime was committed; and
(e) *Victim's age at the time the crime was committed*.

*Id.* at 12.06.01.05(C)(4) (emphasis added).

Under COMAR 12.06.01.06, a Supervising Authority "shall establish procedures for … [o]btaining information required for the registration statement before to [sic] its submission to the Sex Offender Registry Unit and to other agencies as required." In

- 9 -

addition, "before releasing a registrant, a representative of the Supervising Authority shall complete the registration statement, including the information required under Regulation .05 of this chapter." *Id.* at 12.06.01.06(C)(1)(a) (cleaned up).

### B. Discussion

Against this backdrop, I turn to the Majority's interpretation of MSORA as requiring "the trier of fact–not the Department–[to] determine the facts necessary for placement on the Registry." Maj. Slip Op. at 29.[9] I disagree with the Majority's analysis for several reasons. First, the General Assembly must be presumed to understand that, in the normal course, a jury in a criminal case is not asked to decide whether a victim of an offense is a minor (or any other fact) unless such a determination is necessary for a finding of guilt on a charged offense. Yet, as the above discussion makes clear, the General Assembly has created many circumstances that trigger sex offender registration in Maryland that are not elements of a criminal offense. It seems very unlikely that the General Assembly intended to make so many non-element-based determinations an additional responsibility of the criminal trier of fact without expressly saying so, especially given that there is no precedent

---

[9]    In Part II of its Discussion, the Majority holds that, as a matter of constitutional law, the trier of fact must decide beyond a reasonable doubt during the adjudicatory phase of a criminal case whether the victim of a human trafficking charge brought under CR § 11-303(a) was a minor in order for a person convicted under § 11-303(a) to be required to register as a sex offender. Given that holding, Part I of the Majority's analysis seems not to be essential. In other words, on the Majority's view, even if the General Assembly intended to leave such a determination to the Department or other Supervising Authority, the Sixth Amendment prohibits the General Assembly from doing so. Because I disagree with the Majority's Sixth Amendment analysis, I must reach the question of statutory interpretation that the Majority considers in Part I of its Opinion.

- 10 -

under Maryland law that I am aware of for the trier of fact in the guilt phase[10] of a criminal case to make a finding that does not bear on an element of a charged offense. Put another way, I do not believe the General Assembly would have assumed when drafting MSORA that a criminal jury (or judge in a nonjury trial) would ever be called upon to determine the age of a victim, where the offense does not require the State to prove the age of the victim in order to obtain a conviction. Given that such a role for a jury would be a very significant departure from the traditional role of Maryland criminal juries, I believe that, if the General Assembly had wanted to make such determinations the province of the jury, it expressly would have said so.

Second, my interpretation of MSORA is buttressed by the reality that many of the circumstances that are not elements of a criminal offense, but which the General Assembly has made prerequisites to sex offender status, are not circumstances that a Maryland jury (or even a Maryland sentencing court) would ever be in a position to decide. For example, a Maryland resident who is convicted in another jurisdiction of an offense that, if committed in Maryland "would constitute" one of the Maryland offenses that triggers registration, or is convicted in a military court of an offense that is "similar to" various

---

[10]    When Maryland maintained the death penalty as a possible punishment for first-degree murder, a jury often would decide beyond a reasonable doubt in the penalty phase of a capital murder case whether a particular aggravating factor alleged by the State was present. *See generally Borchardt v. State,* 367 Md. 91 (2002). That process was explicitly governed by statute, *see id.* at 101-02, and involved the ultimate punishment. The Majority does not assert that the capital murder penalty phase that previously existed under Maryland law is relevant to the consideration of whether the General Assembly intended the criminal trier of fact to determine non-element facts necessary for placement on the Sex Offender Registry. Nor could such a link plausibly be inferred.

listed federal offenses that trigger registration, is defined as a sex offender under MSORA and must register at the specified tier. *See* CP §§ 11-701(o)(3), 11-701(p)(5) & 11-701(q)(5); CP § 11-701(o)(5); CP §§ 11-701(o)(6), 11-701(p)(6) & 11-701(q)(6). Practically speaking, only a registrant's Supervising Authority would be in a position to determine whether a Maryland resident convicted in another jurisdiction must register as a sex offender in Maryland on the basis that his or her offense of conviction "would constitute" or is "similar to" an offense specified in CP § 11-701(o), (p), or (q). Given that the General Assembly indisputably intended that the Supervising Authority, not the criminal trier of fact, decide some of the non-element circumstances that are prerequisites to sex offender registration, I believe the General Assembly intended the Department also to have authority to find whether the other non-element circumstances referenced in the same subsections of § 11-701 are present in a particular case. *See Whiting-Turner Contracting Co. v. Fitzpatrick,* 366 Md. 295, 302-03 (2001) ("[W]hen interpreting any statute, the statute as a whole must be construed, interpreting each provision of the statute in the context of the entire statutory scheme").

Third, the Department or other Supervising Authority is well positioned to determine the age of a victim and the other non-element circumstances that trigger registration. The age of a victim usually will be determinable by the Supervising Authority with minimal effort, through the review of undisputed evidence, and will not likely require a credibility determination. *See Hutton v. State*, 339 Md. 480, 500-01 (1995) (discussing the "province of the jury" to "judge the credibility of the witnesses and weigh their testimony and … to resolve contested facts").

Another example of a non-element factual determination that is obviously within the competency of a Supervising Authority to determine is the circumstance of prior registration being in effect when a person commits a new offense that qualifies for registration. Consider a person who is charged with committing a fourth-degree sex offense under CR § 3-308 at a time when he already was registered as a Tier II sex offender. Under CP § 11-701(q)(4), if that person is convicted of the new fourth-degree sex offense, he will be a Tier III sex offender because he was registered as a Tier II sex offender when he committed the new offense.[11] Under the Majority's interpretation of MSORA, carried to its logical conclusion, a Supervising Authority would not be authorized to determine that the person was registered as a Tier II sex offender at the time he committed the fourth-degree sex offense because the General Assembly has not expressly authorized the Supervising Authority to do so. Rather, under the Majority's reasoning, the fact of the person's prior registration as a Tier II sex offender would be alleged in the indictment and introduced at the trial for fourth-degree sex offense, and the jury would be asked to determine whether the defendant was a Tier II sex offender at the time he committed the alleged fourth-degree sex offense. It is difficult to conceive that the General Assembly would have created such a scenario *sub silentio*, which would not only inject additional time and complexity into a criminal trial being conducted in a presumably busy Circuit Court, but would also allow the jury to learn very prejudicial information about a

---

[11]     *See also* CP § 11-701(p)(4) (similar provision that defines a person as a Tier II sex offender if the person is convicted of an offense that would require registration as a Tier I offender after the person was already registered as a Tier I offender).

defendant, where it is completely irrelevant to a finding of guilt. It is much more likely that the General Assembly intended that, if my hypothetical defendant were convicted of fourth-degree sex offense, the Department (or other Supervising Authority) would simply check the Sex Offender Registry and determine that he was registered as a Tier II offender at the time he committed the fourth-degree sex offense, and would notify him that, upon release from custody, henceforth he would be required to register as a Tier III sex offender. Again, if one accepts that the General Assembly intended a Supervising Authority to determine this non-element fact, that conclusion provides support for the view that the General Assembly intended a Supervising Authority likewise to determine the other non-element circumstances (including the age of the victim) set forth in the other subsections of § 11-701(o), (p), and (q).

Fourth, the General Assembly amended MSORA in 2010, several years after this Court's landmark decision in *Young v. State*, 370 Md. 686 (2002). As discussed in more detail below, in *Young* this Court rejected a constitutional challenge to the non-jury finding of the age of a victim that resulted in Young being an "offender" under the pre-2010 version of MSORA. It appears it was the sentencing court that determined Young's victim was a minor and then ordered Young to register as an "offender," consistent with MSORA's requirement at the time that a court exercise its discretion to order a person to register before the person would be considered an "offender" and therefore required to register. *See* CP § 11-701(h) (2001, 2008 Repl. Vol., 2009 Supp.); *Young*, 370 Md. at 692-93 & n.4. Had the General Assembly intended the trier of fact to decide the age of the victim for purposes of sex offender registration when it is not an element of a criminal offense,

- 14 -

notwithstanding this Court's determination in *Young* that the Sixth Amendment does not require the jury to make such a finding, presumably the General Assembly would have expressly said so on one of the several occasions when it amended MSORA after *Young*. Not only has the General Assembly never said that such a finding is a job for the criminal trier of fact; it also substantially decreased the role of sentencing courts in the registration process as part of the 2010 amendments to MSORA when it eliminated the provision in CP § 11-701(h) under which the trial court in *Young* apparently had determined that Young's victim was a minor and then exercised discretion to order Young to register as an "offender." Given that: (1) making findings that are not essential to determine the elements of a criminal offense is not traditionally the function of a criminal trier of fact; (2) the General Assembly has never shown any sign that a criminal trier of fact should take on such a role; and (3) post-*Young*, the General Assembly has largely taken sentencing courts out of the business of ordering registration, I believe that the General Assembly necessarily has left it to a Supervising Authority to determine all such non-element facts.

Fifth, I find it significant that the Department has promulgated regulations that make it the responsibility of the Supervising Authority to supply and publish all the information about the registrant's crime for the registration statement, including the "[v]ictim's age at the time the crime is committed." COMAR 12.01.06.05(C)(4). These regulations necessarily contemplate that the Supervising Authority will conduct a review of court records and other potentially relevant materials and thereby determine the specific age of the victim at the time of the registrant's prior criminal offense, regardless of whether the age of the victim is an element of the offense. For example, if a person is convicted of first-

degree rape, which automatically triggers Tier III registration, the Supervising Authority must supply the age of the victim for inclusion on the registration statement, even though the victim's age is not an element of the offense. Before supplying and publishing the age of the victim, the Supervising Authority necessarily must first determine it.

Even in cases where, in order to sustain a conviction, the State must prove that a victim is a minor or is in another particular age range, under COMAR 12.01.06.05(C)(4), the Supervising Authority does not merely include in a registration statement that the victim was in the age range set forth in the pertinent criminal statute, but rather is required to supply *the specific age* of the victim within that range. This regulation supports the Department's position in this case that a Supervising Authority is authorized to determine whether the victim was a minor (or in another age range), where that fact is not an element of a potential registrant's criminal offense, but is a prerequisite to a person being required to register as a sex offender. This Court owes deference to the Department's interpretation of a Supervising Authority's authority under MSORA and under the Department's own regulations. *Adventist Health Care*, 392 Md. at 119; *see also Board of Physician Quality Assurance v. Banks*, 354 Md. 59, 69 (1999) ("[A]n administrative agency's interpretation and application of the statute which the agency administers should ordinarily be given considerable weight by reviewing courts," and "the expertise of the agency in its own field should be respected.").

The Majority's arguments in support of its interpretation of MSORA are unconvincing. The Majority primarily relies on the absence of an express delegation of authority to determine whether a victim was a minor, where that fact is not an element of

the offense. However, the Majority's insistence on an express delegation of authority in this context runs contrary to this Court's recognition for many decades "that the tasks of making factual determinations and resolving disputes are not reserved exclusively to the judicial branch of government." *Maryland Aggregates Ass'n v. State,* 337 Md. 658, 676 (1995). To the contrary, it is well settled that "administrative bodies may exercise quasi-judicial authority, which essentially consists of deciding questions of fact and law subject to judicial review." *Reliable Contracting Co., Inc. v. Maryland Underground Facilities Damage Prevention Auth.*, 446 Md. 707, 717 (2016) (citing *Heaps v. Cobb,* 185 Md. 372, 378-79 (1945)).

This Court has previously found implied delegation of quasi-judicial duties to an agency within the executive branch, where such delegation is consistent with the purposes of the legislation in question. *See id.* In my view, the General Assembly has done the same in MSORA. This is even more apparent when one considers the broad grant of regulatory authority that the General Assembly provided in the statute. *See* CP § 11-720 (empowering the Secretary of the Department to adopt regulations to carry out MSORA); *see also Christ by Christ v. Maryland Dep't of Nat. Res.*, 335 Md. 427, 437-39 (1994) (discussing "numerous situations" where the General Assembly has delegated "broad power to an administrative agency to adopt legislative rules or regulations in a particular area," and stating that "this Court has upheld the agency's rules or regulations as long as they did not contradict the language or purpose of the statute").

The Majority invokes "principles of fairness" to justify its conclusion that the General Assembly did not intend the Department to fill the adjudicatory gap left in

Rogers's case. Maj. Slip Op. at 29. The Majority's point here is that a person who is convicted under CR § 11-303(b)(1) necessarily has all facts that trigger sex offender registration (including that the victim was a minor) found by the criminal trier of fact, whereas, under the Department's interpretation of MSORA, a person who is convicted under CR § 11-303(a) can end up on the Sex Offender Registry without the trier of fact finding beyond a reasonable doubt that the victim of the offense was a minor. The Majority reasons that the General Assembly would not have intended such an "incongruous" and "illogical" result. Maj. Slip Op. at 27, 28.

In my view, by considering the interplay of CP § 11-701(p)(2) and CR § 11-303 in a vacuum, the majority misinterprets the General Assembly's intent. As discussed above, the General Assembly has provided for many instances in which a person will be convicted of a potentially qualifying crime that does not include the age of the victim as an element of the offense. In addition, the General Assembly has provided for many other instances in which the circumstance that triggers registration is not a matter that could even theoretically be decided by a Maryland trier of fact. All those other instances should be considered in this Court's examination of legislative intent. When they are considered, the General Assembly's decision to allow a Supervising Authority to determine the existence of the age of a minor in a case prosecuted under CR § 11-303(a) does not seem anomalous, but rather is consistent with the overall statutory scheme. The age of the victim of a person convicted under CR § 11-303(a) is just one of many such instances. The General Assembly has shown that it attempts to narrowly tailor registration to its remedial purpose by requiring an additional circumstance to be present with respect to the commission of certain

offenses before the perpetrators of those offenses will be required to register. In no way does it follow, however, that the General Assembly intends to require a jury determination beyond a reasonable doubt that the additional circumstance is present.

In other words, as applied to this case, it does not follow from the General Assembly's creation of a felony violation of CR § 11-303 where the victim is a minor that the General Assembly intended sex offender registration for someone who is convicted of a misdemeanor violation of CR § 11-303, and whose victim is a minor, effectively to be decided by a jury. Given that neither Rogers nor the Majority cites any statute anywhere in the United States that expressly requires (or has been interpreted to require) a criminal trier of fact to determine a non-element circumstance that triggers sex offender registration, and also does not cite any case in which an *Apprendi* challenge has resulted in a court deciding that a trier of fact must make such determinations under a reasonable doubt standard as a matter of constitutional law, I believe the General Assembly most certainly assumed and intended that the trier of fact would *not* make such determinations under MSORA, thereby leaving them to a Supervising Authority to make, subject to judicial review.[12]

---

[12]    As discussed in Part II.C. below, the Majority agrees that the General Assembly's intent in enacting MSORA was remedial, not punitive. *See* Maj. Slip Op. at 39. Had the General Assembly intended sex offender registration to effect additional punishment on those convicted of human trafficking and the other crimes referenced in CP § 11-701(o), (p), and (q), perhaps the General Assembly post-*Apprendi* would have limited the application of MSORA only to instances in which a registrant was convicted of a specified crime and would not have provided for some instances in which additional non-element circumstances trigger registration. Under *Apprendi* and *Young*, the General Assembly would not have been required to so limit MSORA. *See* Part II.C.3 below. Nevertheless, the fact that the General Assembly has not removed the non-element circumstances that trigger sex offender registration from CP §§ 11-701(o), (p), and (q), is

- 19 -

The Majority also believes that the General Assembly would not intend the Department to make non-element determinations that result in sex offender registration because it would then be "incumbent on the defendant to seek relief from the Department's finding, after the criminal proceeding has concluded, without knowing how the Department reached its conclusion," and the defendant "would bear the burden of establishing that placement on the Registry was erroneous." Maj. Slip Op. at 28. But it is commonplace that those who are aggrieved by agency action must challenge it as arbitrary and capricious and/or not supported by substantial evidence. Thus, it would not be a novel proposition to the General Assembly – or "turn reasonableness on its head," Maj. Slip Op. at 29 – that an administrative determination that a victim was a minor for purposes of sex offender registration would be reviewed under the substantial evidence standard, and that the burden of persuasion would lie with the registrant. *See, e.g., Maryland Aviation Admin. v. Noland,* 386 Md. 556, 581 (2005) (given the presumption of validity of an agency decision, the burden in a judicial review action is upon the party challenging the agency action). As discussed above, the age of a victim typically will be easily determinable through review of the record of the criminal trial or other records that a Supervising Authority might obtain. The registrant presumably will have obtained the State's evidence regarding the age of the victim in discovery in the criminal case, and therefore will be well positioned to know if the Supervising Authority has arrived at an incorrect determination that should be

---

further evidence that the General Assembly does not intend MSORA, as amended, to be punitive and therefore does not intend that such circumstances be determined by the criminal trier of fact beyond a reasonable doubt.

- 20 -

challenged.

Moreover, if a person ordered to register brings an administrative mandamus action against the Department or other Supervising Authority, the defendant agency will be required to disclose either the record underlying the decision or, if no record exists, "the agency shall provide (1) a verified response that fully sets forth the grounds for its decision and (2) any written materials supporting the decision." Md. Rule 7-402(d). The court may also remand the matter to the agency for further supplementation of materials supporting its decision. *Id.* If a registrant instead elects to challenge the factual determination of the Supervising Authority through a declaratory judgment action, the registrant can obtain discovery from the defendant agency in the normal course of litigation.

Finally, the Majority's reliance on *State v. Duran,* 407 Md. 532, 534 (2009), *Cain v. State,* 386 Md. 320, 326 (2005), and *In re Nick H.,* 224 Md. App. 668, 673 (2015), is misplaced. The Majority notes that, in those cases, the trial judges ordered the defendants to register. Maj. Slip Op. at 30. It appears the Majority believes those cases stand for the proposition that, because the trial courts ordered registration for those persons, the General Assembly did not leave any circumstances to the Supervising Authority to determine. However, the majority overlooks that, in *Duran* and *Cain,* the defendants registered because they were "offenders" under the then-current version of MSORA. As discussed above, prior to 2010, an "offender" was defined as "*a person who is ordered by a court to register under this subtitle*" and who had been convicted of violating any of a number of criminal statutes. CP § 11-701(h) (2001, 2008 Repl. Vol., 2009 Supp.) (emphasis added). Thus, prior to 2010, registration was not required for individuals in Cain's and Duran's

- 21 -

circumstances unless a court ordered them to register. It does not follow that, after the General Assembly eliminated virtually all sentencing courts' discretionary determinations regarding registration as part of the 2010 amendments to MSORA,[13] the General Assembly intended all factual determinations necessary to registration to be made by the criminal trier of fact beyond a reasonable doubt.[14]

In sum, I am not persuaded that the General Assembly, without any express indication whatsoever, has established a process – apparently never recognized anywhere in the United States until today – under which a criminal trier of fact determines facts that are unnecessary for a finding of guilt but are necessary for a person to be required to register as a sex offender. To the contrary, the General Assembly has left it to the Supervising Authority to make the necessary determinations of all non-element circumstances that trigger registration.

---

[13] The one holdover provision from the era when sentencing courts exercised discretion with respect to whether an "offender" would be required to register can be found in CP § 11-701(q)(1)(iv) (2001, 2018 Repl. Vol, 2019 Supp.), which provides that a person who is convicted of kidnapping under CR § 3-502 is a Tier III sex offender "if the victim is an adult, and the person has been ordered by the court to register under this subtitle."

[14] In *Nick H.*, the juvenile court applied a specific court procedure that is required under CP § 11-704(c) before a person who committed an offense as a juvenile may be required to register. 224 Md. App. at 674-79. Thus, *Nick H.* also does not support the majority's interpretation of MSORA.

# II

**The Majority Errs in Holding That, as a Matter of Constitutional Law, the Criminal Trier of Fact Must Determine Beyond a Reasonable Doubt the Existence of Non-Element Facts That Trigger Registration Under MSORA.**

### A. Rogers's Constitutional Arguments Are Not Preserved for Appellate Review and the Court Should Not Reach Them.

In their principal brief, Respondents argue that Rogers failed to preserve his constitutional arguments for appellate review. Therefore, Respondents contend, we should not consider these arguments, in keeping with Md. Rule 8-131(a). In his Reply Brief, Rogers does not dispute Respondents' assertion that his constitutional arguments are unpreserved. In my view, the Court should not consider these arguments in deciding this case.[15]

Rule 8-131(a) provides: "Ordinarily, the appellate court will not decide any other issue [besides subject matter and personal jurisdiction] unless it plainly appears by the record to have been raised in or decided by the trial court, but the Court may decide such an issue if necessary or desirable to guide the trial court or to avoid the expense and delay of another appeal." This Court has often cautioned that its "prerogative to review an unpreserved claim of error is to be rarely exercised and only when doing so furthers, rather than undermines, the purposes of the rule." *Ray v. State*, 435 Md. 1, 22 (2013) (cleaned up); *see also In re Kaleb K.*, 390 Md. 502, 513 (2006) (describing adherence to Rule 8-

---

[15]     The Majority states that Rogers's separation of powers argument is not a basis for its holding in this case. Thus, the Majority does not address whether this issue is preserved for appellate review. Maj. Slip Op. at 12 n.3. The Majority does not opine whether Rogers's *Apprendi* argument is preserved, and if it is not, whether the Court should exercise discretion to reach it.

131(a) as promoting "basic fairness to the trial court and to opposing counsel, as well as being fundamental to the proper administration of justice") (internal quotation marks and citation omitted).

In the trial court, Rogers never raised the constitutional arguments that he advances in this Court. Rather, Rogers based his claim to a declaration removing him from the Sex Offender Registry solely on his contention that this case is controlled by *Cain*:

> [W]hen we're trying to decide whether or not a minor is involved, what we should look at, is exactly what he pled guilty to, the statement of facts put on the record by the State, by the prosecutor, where [the age of the victim is not] mentioned…. [T]his is very much like *Cain v. State*, ... [where] the Court said, after reviewing the statutes, we conclude that whether the elements of a crime are sexual in nature is dispositive of whether the person is an offender requiring registration. So, we look to the elements of the crime for which one stands convicted, to determine whether registration is appropriate or not. So if you look at the actual elements of 11-303[a], nothing in there requires a showing that the person is, in fact, a minor.

On appeal, neither side raised a constitutional issue in its framing of the questions presented for the Court of Special Appeals to decide. In defending the Circuit Court's grant of summary judgment, Rogers continued to base his argument on *Cain* and the lack of an age element in his offense of conviction. He again made no separation of powers argument, nor did he provide any analysis of the intents-effects test as it applies to MSORA's registration requirements, or cite *Young*, *Doe v. Dep't of Pub. Safety and Corr. Services*, 430 Md. 535 (2013), or *Apprendi*.[16]

---

[16] In one sentence of his Court of Special Appeals brief, Rogers cited *Nick H.*, 224 Md. App. at 701, for the alleged proposition that, because a conviction under CR § 11-303 does not automatically lead to Tier II sex offender status, CP § 11-701(p)(2) "mandates a court finding … adduced at a hearing" (internal quotation marks omitted, alteration by

- 24 -

The Majority correctly concludes that a conviction under CR § 11-303(a) does not rule out the possibility of Tier II sex offender registration, despite the fact that the age of the victim is not an element of the offense. Maj. Slip Op. at 25. This is a rejection of the only argument Rogers made in the trial court or in the Court of Special Appeals.[17]

In these circumstances, I would not reach Rogers's constitutional arguments, which he makes for the first time before this Court. Rogers is asking this Court to expand the role of the criminal trier of fact in a way that appears to be unprecedented in the United States. He cites no legislatively or judicially created procedure anywhere in the United States, nor has my research disclosed such a procedure, in which the trier of fact decides beyond a reasonable doubt whether a non-element circumstance exists that would trigger sex offender registration. Because Rogers did not make his constitutional arguments below,

---

Rogers). The pertinent provision of MSORA in *Nick H.,* CP § 11-704(c), requires a *post-adjudication* hearing at which the court determines whether, under a "*clear and convincing evidence standard* … [a person who committed an offense as a juvenile] is at significant risk of committing a sexually violent offense or an offense for which registration as a tier II sex offender or tier III sex offender is required." CP § 11-704(c)(1)(iii) (emphasis added). Rogers's citation of *Nick H.* in his Court of Special Appeals brief neither raised an argument concerning the delegation of factfinding to the Department, nor raised an argument that sex offender registration increases Rogers's punishment and therefore, under the Sixth Amendment, required the trier of fact in his criminal case to find beyond a reasonable doubt that his victim was a minor.

[17]    In their Reply Brief in the Court of Special Appeals, Respondents cited *Young* for the proposition that this Court had rejected an argument that was "similar" to the argument Rogers was making, and explained that, in *Young*, this Court rejected an *Apprendi* challenge to MSORA. In its opinion reversing the Circuit Court's grant of summary judgment for Rogers, the Court of Special Appeals also cited *Young*. However, the intermediate appellate court did not conduct an intents-effects analysis, as it certainly would have, had the Court believed that Rogers was arguing that MSORA is now sufficiently punitive to require the criminal trier of fact to find beyond a reasonable doubt all non-element facts that trigger registration.

- 25 -

this Court does not have the benefit of separation-of-powers or intents-effects analyses by the lower courts to help inform our decision making on these issues. Nor is the briefing on these issues in this Court from either side as robust as it should be, given the stakes involved. For these reasons, I do not believe that we should excuse Rogers's failure to preserve his constitutional arguments, including the *Apprendi* argument upon which the Majority's opinion ultimately turns. *See Conyers v. State,* 354 Md. 132, 151 (1999) (explaining that "[w]e usually elect to review an unpreserved issue *only after it has been thoroughly briefed and argued,* and where a decision would … help correct a recurring error" or otherwise further the administration of justice) (emphasis added); *Krause Marine Towing Corp. v. Ass'n of Maryland Pilots*, 205 Md. App. 194, 223 (2012) (declining to exercise discretion to reach constitutional claim and observing that, "on matters of such import and significance as constitutional questions, we cannot overstress the necessity of fully preserving the issue below. The trial court should be given not only the opportunity to rule, but also the assistance of counsels' arguments and memoranda in reaching its result.") (quoting *Hall v. State*, 22 Md. App. 240, 245 (1974) (cleaned up)).

### B. MSORA Does Not Violate Maryland's Separation of Powers.

Although the Majority does not reach Rogers's separation of powers argument, because I conclude that Rogers's other arguments do not entitle him to relief, I will address whether the Department's finding of the age of his victim for purposes of sex offender registration violates separation of powers principles. In my view, there is no separation of powers violation by virtue of the General Assembly's implied delegation of authority to a Supervising Authority to determine whether a circumstance that is not an element of a

potential registrant's offense of conviction exists for purposes of triggering sex offender registration.

Article 8 of the Declaration of Rights provides: "That the Legislative, Executive, and Judicial powers of Government ought to be forever separate and distinct from each other; and no person exercising the functions of one of said Departments shall assume or discharge the duties of any other." As this Court has recognized, "[t]he modern tendency of the courts is toward greater liberality in permitting grants of discretion to administrative officials in order to facilitate the administration of the laws as the complexity of governmental and economic conditions increases." *Governor of Maryland v. Exxon Corp.*, 279 Md. 410, 440-41 (1977) (internal quotation marks and citation omitted); *see also Maryland Aggregates Ass'n*, 337 Md. at 677 (explaining that this Court "has recognized the delegation to administrative agencies of both legislative and adjudicatory power as legitimate, as the separation of powers concept may constitutionally encompass a sensible degree of elasticity and should not be applied with doctrinaire rigor") (quoting *Dep't of Nat. Res. v. Linchester*, 274 Md. 211, 220 (1975) (cleaned up)). Thus, as stated above, it is well settled that "administrative bodies may exercise quasi-judicial authority, which essentially consists of deciding questions of fact and law subject to judicial review." *Reliable Contracting Co.*, 446 Md. at 717. However, none of the three branches of Government may usurp an "essential" function of another branch. *Getty v. Carroll Cty. Bd. of Elections*, 399 Md. 710, 732 (2007); *see also Shell Oil Co. v. Supervisor of Assessments of Prince George's Cty.*, 276 Md. 36, 47 (1975) ("Any attempt to authorize an

administrative agency to perform what is deemed a purely judicial function or power, would violate the separation of powers principle.") (cleaned up).

Rogers argues before this Court that allowing the Department to make the determination that his victim was a minor and, therefore, that Rogers must register as a sex offender, "permits an administrative agency to impose punishment, a quintessential judicial function, in violation of the separation of powers." Brief for Petitioner at 20. I disagree.

The Department's determination of circumstances that the General Assembly has seen fit to trigger sex offender registration in Maryland, but which are not elements of a potential registrant's offense of conviction, is the type of quasi-judicial power that this Court has long recognized as legitimate, given that it is subject to judicial review. *See Reliable Contracting,* 446 Md. at 717. Although there is no specific process set forth in the Maryland Code or COMAR for judicial review of a Supervising Authority's determination of the kind the Department made here, it is clear that Rogers and others similarly situated can avail themselves of judicial review of the agency action, either through an administrative mandamus action under Md. Rule 7-402 or, as occurred in this case, a declaratory judgment action.

As discussed below, sex offender registration is not sufficiently punitive in effect to require under the Sixth Amendment that a criminal trier of fact determine a non-element fact that triggers registration. But even if registration were considered effectively to be "punishment," it still would not be an authorized *sentence* for the offense of which Rogers was convicted. In sentencing Rogers, the Circuit Court was authorized to impose as a sentence a term of imprisonment not exceeding 10 years, or a fine not exceeding $5,000,

or both. CR § 11-303(c)(1). The sentencing court was not authorized to impose a term of registration as a sex offender as an independent part of Rogers's sentence, nor did the sentencing court have the authority to order that Rogers need not register. *See Doe*, 430 Md. at 599-600 (Barbera, J., dissenting). To the contrary, sex offender registration is a collateral consequence of a conviction. *Id.*; *see also Hyman v. State*, 463 Md. 656, 677 n.9 (2019) (noting that Md. Rule 4-242(f) confirms that sex offender registration "is a *collateral* consequence" of a guilty plea to an offense listed in CP § 11-701) (emphasis in original). It follows that the Department did not usurp the judicial function of imposition of sentence when it directed Rogers to register, based on its determination that his victim was a minor. *See also State v. Bostic*, 729 S.E.2d 835, 842-45 (W. Va. 2012) (no separation of powers violation under West Virginia law where State Police determined that, because Bostic's victim was a minor, the term of Bostic's registration increased after a change in the registration law); *Lemmon v. Harris*, 949 N.E.2d 803 (Ind. 2011) (no separation of powers violation found in application of Indiana's registration law); *Herreid v. State*, 69 P.3d 507 (Alaska 2003) (no separation of powers violation under Alaska's registration statute).

**C. The Sixth Amendment Does Not Require That the Criminal Trier of Fact Determine the Age of a Victim Beyond a Reasonable Doubt, Where That Fact Is Not Necessary to Prove a Defendant's Guilt, But Is Necessary to Trigger Sex Offender Registration.**

In sustaining Rogers's *Apprendi*[18] challenge to the Department's determination of

---

[18]    In *Apprendi*, the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory

the age of his victim for purposes of triggering sex offender registration, the Majority *sub silentio* overrules a portion of *Young v. State*. In *Young,* this Court considered and rejected an *Apprendi* claim that is materially indistinguishable from Rogers's *Apprendi* claim. 370 Md. at 711-18. Until today, *Young* has remained good law with respect to an *Apprendi* challenge to MSORA's registration requirements. The Majority is wrong to abrogate it.

1. The *Young* Decision

The petitioner in *Young* was convicted of transporting a person for purposes of prostitution, in violation of Art. 27, § 432, a predecessor version of the human trafficking crime to which Rogers pled guilty. *See Young,* 370 Md. at 692. At the time of Young's offense, unlike today, there was not a second mode relating to the age of the victim by which a person could violate the statute. As was the case with CR § 11-303(a) under which Rogers was convicted, a conviction under § 432 did not automatically trigger sex offender registration. Rather, Young only would be an "offender" under the then-applicable version of MSORA and thereby required to register if a court exercised discretion to order him to register *and* if the intended prostitute was a minor, i.e., under the age of 18. *Young*, 370 Md. at 693. In Young's case, as here, the criminal trier of fact did not determine that the victim was a minor. Rather, the sentencing court apparently made that determination in Young's case. Young challenged the order to register on the ground that, under *Apprendi*, the jury in his criminal case needed to determine the age of his victim beyond a reasonable

---

maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490. The Court based its holding on the Sixth Amendment right to a jury trial, applied to the States by the Fourteenth Amendment. *Id.* at 476.

doubt before the court could consider whether to order him to register.

This Court rejected Young's *Apprendi* challenge for two reasons. First, after conducting an extensive survey of relevant case law and conducting an intents-effects analysis, the Court held that the version of MSORA that existed at the time of Young's offense was not "so punitive that the General Assembly's intent to create a remedial scheme may be disregarded." 370 Md. at 716. Rather, the Court noted its agreement "with those courts that have found that sex registration and notification statutes are not punishment in the constitutional sense," and therefore held that "requiring petitioner to register as a sex offender … does not constitute punishment, but is a remedial requirement for the protection of the public." *Id.*

Second, the Court held that "[e]ven assuming, *arguendo,* that sexual offender registration constituted punishment for the purposes of our *Apprendi* analysis, the requisite statutory predicate that [the victim] was under eighteen years of age at the time of petitioner's crime is not a fact that increases the penalty for a crime beyond the prescribed statutory maximum." *Id.* The Court noted that Young had been given a suspended sentence, and explained that *Apprendi* "does not apply to a case in which the trial court imposes a discretionary sentence within the permissible statutory range." *Id.* The Court also distinguished sex offender registration from increases in prison time beyond an otherwise applicable statutory maximum that result from the determination of facts that are not found by the jury. *See id.* at 717-18 (reasoning that the "finding of the statutory predicates for sex offender registration is much more akin" to the finding of the amount owed by a defendant for purposes of restitution (which does not implicate a "statutory maximum") than the

finding of a specific drug threshold quantity, which can affect the statutory maximum term of imprisonment a defendant faces).

2. Sex Offender Registration Under MSORA Is Not Punitive Under the Intents-Effects Test.

The Majority does not hold that the *Young* Court's application of the intents-effects test to MSORA was incorrect. Rather, the Majority concludes that the 2009-10 amendments to MSORA transformed Maryland's sex offender registration from a remedial program that protects the public into a punitive regime. Maj. Slip Op. at 38-44. I disagree.

The validity of the current version of MSORA under the *ex post facto* provisions of the Maryland Declaration of Rights and the United States Constitution was the subject of *Doe,* 430 Md. at 535. The fractured resolution of *Doe* left open the question whether registration under the current version of MSORA is "punishment in the constitutional sense," or rather "is a remedial requirement for the protection of the public," *Young*, 370 Md. at 716, as determined through application of the intents-effects test. The three-member Plurality in *Doe* did not conduct an intents-effects analysis, concluding under Maryland law that the change in MSORA after Doe's conviction "disadvantaged" Doe for *ex post facto* purposes. *Id.* at 559 *et seq.* In a concurring opinion, the Honorable Robert N. McDonald, joined by the Honorable Sally D. Adkins, did not explicitly conduct an intents-effects analysis, but nevertheless concluded that "the cumulative effect of 2009 and 2010 amendments of [MSORA] took the law across the line from civil regulation to an element of the punishment of offenders." *Id.* at 578 (McDonald, J., concurring).

- 32 -

Dissenting from the grant of relief to the petitioner in *Doe*, the Honorable Mary Ellen Barbera conducted a thorough intents-effects analysis and concluded that MSORA, as amended, is not sufficiently punitive to make it a law that is subject to *ex post facto* protections. *Id.* at 578-96 (Barbera, J., dissenting).[19]

I can do no better than now-Chief Judge Barbera did in her opinion in *Doe* to explain why MSORA, as amended, is not "punitive" for purposes of a constitutional analysis, thereby refuting the Majority's application of the intents-effects test here. Regarding the first part of the intents-effect test, Judge Barbera observed that the General Assembly did not intend MSORA, as amended, to be punitive. Rather, the intent of the General Assembly in enacting the 2009 and 2010 amendments was "to accomplish two public-safety, regulatory ends," specifically the incorporation of provisions of the federal Sex Offender Registration and Notification Act ("SORNA"), 42 U.S.C. § 16901 *et seq.*, and "to further the objectives of the then-extant civil regulatory scheme this Court previously held [in *Young*] to be nonpunitive." *Doe*, 430 Md. at 587 (Barbera, J., dissenting) (footnote omitted). Although the Majority does not explicitly endorse Judge Barbera's analysis of the General Assembly's intent in enacting the 2009 and 2010 amendments to MSORA, neither does the Majority voice any disagreement on this point. *See* Maj. Slip Op. at 39; *see also Long v. Maryland State Dep't of Pub. Safety and Corr. Services*, 230 Md. App. 1,

---

[19]     The Honorable Glenn T. Harrell III separately concurred in the judgment granting relief to Doe, but not because of any asserted punitive effect of MSORA. *See id.* at 569-75.

21 (2016) ("[T]here is nothing in the language used in either the 2009 or 2010 amendments that indicates a legislative intent to punish the sex offender.").

Judge Barbera then proceeded to the second part of the intents-effects test, first quoting the Supreme Court's seminal decision in this area, *Smith v. Doe,* 538 U.S. 84 (2003), for the proposition that, "[b]ecause we ordinarily defer to the legislature's stated intent, *only the clearest proof* will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty." *Doe,* 430 Md. at 586 (Barbera, J., dissenting) (quoting *Smith,* 538 U.S. at 92) (alterations and emphasis supplied by Judge Barbera).

Judge Barbera then applied pertinent factors drawn from *Kennedy v. Mendoza-Martinez,* 372 U.S. 144, 168-69 (1963), to the question of whether the 2009 and 2010 amendments to MSORA are sufficiently punitive to convert the law from the civil regulatory scheme that the Court analyzed in *Young* to the equivalent of a criminal penalty. As to whether sex offender registration has historically been regarded as a punishment, Judge Barbera concluded that there is "no merit in the contention that the online posting of information concerning the registrant's conviction, his photograph, residence, etc., amounts to public humiliation and shaming." *Doe*, 430 Md. at 592 (Barbera, J., dissenting); *see also Young,* 370 Md. at 714 ("Sex offender registration traditionally has not been regarded as punishment."). I agree.

As Judge Barbera noted, this Court in *Young* previously observed that, "although public dissemination of one's criminal history certainly has some negative consequences, dissemination of such information in itself has not historically been regarded as punishment

when done in furtherance of a legitimate government interest." *Doe*, 430 Md. at 592 (Barbera, J., dissenting) (quoting *Young*, 370 Md. at 714) (cleaned up). According to Judge Barbera, "[t]hat the means chosen by Congress and the General Assembly to disseminate this information now involves making the registry available online for public access does not render the dissemination punitive in effect or akin to public shaming." *Id.* at 592-93 (footnote omitted). Rather, "[i]t is simply a fact of present-day society that the Internet is one of the most efficient and effective ways to disseminate information; as such, the use of the Internet in this way further supports the conclusion that the purpose and the principal effect of notification are to inform the public for its own safety." *Id.* at 593; *see also id.* ("[W]idespread public access is necessary for the efficacy of the scheme, and the attendant humiliation is but a collateral consequence of a valid regulation.") (quoting *Smith*, 538 U.S. at 99) (cleaned up).

The Majority's (and the *Doe* Plurality's) analogy to shaming, Maj. Slip Op. at 42; *Doe*, 430 Md. at 561, ultimately is inapt because they fail to recognize that, in today's age, there is much more information that is publicly available – and easily accessible – about most Americans than there was when "shaming" was a recognized form of punishment. *See* Matthew W. Meskell, *The History of Prisons in the United States from 1777 to 1877*, 51 Stan. L. Rev. 839, 842 (1999) (explaining that, in colonial America, "[p]unishments designed predominantly to humiliate the offender included public penance, the stocks, the pillory, and the scarlet letter. This group of deterrents depended largely, if not exclusively, for its effect on the shame and embarrassment arising from being punished in front of one's friends and neighbors. Indeed, strangers to communities were much more likely upon

conviction to suffer physical punishment and banishment than the stocks or the pillory.") (footnote omitted). And, regrettably, public shaming on the Internet of nonpublic figures is so common in today's world that it is difficult to conceive of the humiliation attendant to sex offender registration as a form of state-imposed punishment. *See* Kristine L. Gallardo, *Taming the Internet Pitchfork Mob: Online Public Shaming, the Viral Media Age, and the Communications Decency Act*, 19 Vand. J. Ent. & Tech. L. 721, 722-23 (2017) (describing "the fierce and swift nature of online vengeance against those who have committed behavior the Internet deems unacceptable" and noting that "the ills of online public shaming fall especially hard on private citizens who become infamous on the internet overnight due to instances of online shaming gone viral").

My view of the shaming analogy (and Judge Barbera's in her dissenting opinion in *Doe*) is in line with the weight of authority construing similar dissemination provisions in SORNA and other state sex offender registration systems. *See State v. Petersen-Beard*, 377 P.3d 1127, 1134-35 (Kan. 2016). These cases hold that publication requirements do not render registration regimes punitive, "despite candidly recognizing they can result in greatly increased public shame." *Id.* at 201 (referring to all federal circuits that have addressed SORNA's publication requirements); *Kammerer v. State*, 322 P.3d 827, 835 (Wyo. 2014) (quoting *E.B. v. Verniero,* 119 F.3d 1077, 1099 (3d Cir. 1997)) (adopting the Third Circuit's determination that "[p]ublic shaming, humiliation and banishment all involve more than the dissemination of information").

I also disagree with the Majority's (and the *Doe* Plurality's) comparison of sex offender registration to probation. *See* Maj. Slip Op. at 42; *Doe*, 430 Md. at 561. There are

significant distinctions between these two mechanisms. Reporting information, even in person, is not as burdensome as submitting to supervision as part of a sentence of probation. *See Shaw v. Patton*, 823 F.3d 556, 565 (10th Cir. 2016). In addition, probation typically includes a series of conditions that go well beyond the reporting of information associated with sex offender registration, including placing restrictions on weapons and alcohol, requiring employment as well as participation in educational or counseling programs, submitting to regular searches, and obtaining approval of the probation officer before moving. *See id.* Further, MSORA's registration requirements are "regulatory requirements separate from [registrants'] … convictions. In contrast, probation historically involved a deferred sentence based on the underlying offense." *Id.* at 566. While a knowing failure to register can result in a new criminal prosecution, under which a defendant can elect a jury trial and guilt must be established beyond a reasonable doubt, *see* CP § 11-721, a violation of probation can be found by a judge under a preponderance-of-the evidence test. *Wink v. State,* 317 Md. 330 (1989).

With regard to registration constituting an "affirmative disability or restraint," I disagree that the reporting requirements and their incidental effects, such as lost employment opportunities, "weigh [] heavily in favor of registration having a punitive effect." Maj. Slip Op. at 41. To be sure, MSORA's reporting requirements impose burdens on registrants for many years, and damaging incidental effects often flow from registration. However, I agree with Judge Barbera that the burdens imposed on Maryland sex offenders do not constitute affirmative disabilities or punitive restraints, within the meaning of constitutional jurisprudence.

First and foremost, in my view, there is a significant distinction between a "burden" on the one hand, and either a "disability" or a "restraint" on the other. A burden is commonly thought of as an obligation and/or that which is borne with difficulty. *See also Black's Law Dictionary* (11th ed. 2019) (defining burden as a "duty or responsibility" or "[s]omething that hinders or oppresses"). But a burden is usually considered to be something that can be accomplished with effort. A "disability," on the other hand, in the sense relevant here, is a legal incapacity. *See id.* (defining disability as the "inability to perform some function"). For example, a child is legally disabled from bringing a tort action until he or she is 18 years old. *Piselli v. 75th Street Medical,* 371 Md. 188, 215 (2002). Similarly, a "restraint" is understood to be a prohibition of action. *See also Black's* (defining "restraint" as [c]onfinement, abridgment, or limitation").

In my view, MSORA imposes burdens, but not affirmative disabilities or restraints, on registrants. Most notably, of course, registration "imposes no physical restraint, and so does not resemble the punishment of imprisonment, which is the paradigmatic affirmative disability or restraint." *Doe*, 430 Md. at 593 (Barbera, J., dissenting) (quoting *Smith*, 538 U.S. at 100). While registrants are required to report in person to a local law enforcement authority either twice a year (for Tier I and Tier II sex offenders) or four times a year (for Tier III sex offenders and sexually violent predators), *see* CP § 11-707, this burden and the other requirements placed on registrants do not rise to the level of disabilities and/or restraints. But, even if they did, I agree with Judge Barbera that this "conclusion alone would not render the current registration regime, taken as a whole, punitive in effect." *Doe*, 430 Md. at 594 (Barbera, J., dissenting).

- 38 -

Judge Barbera also is correct that "the registration and notification features of the current scheme have a rational connection to the regulatory purpose of the legislative scheme." *Id.* On this point, the Majority agrees. Maj. Slip Op. at 43-44 (citing *Young* favorably for the proposition that sex offender registration statutes have "strong remedial aspects and serve[] the important nonpunitive goal of alerting law enforcement and the community to the presence of sexual predators who may reoffend"). However, the Majority fails to acknowledge that whether "there exists evidence of a strong connection between the features of a regulatory scheme and the obvious, nonpunitive legislative purpose behind the law is a 'most significant' factor in the analysis." *Doe*, 430 Md. at 594 (Barbera, J., dissenting) (quoting *Smith*, 538 U.S. at 102) (cleaned up).

The Majority also agrees with Judge Barbera's assessment that "the features of Maryland's current sex offender registration scheme are not excessive when considered in light of the law's public safety purpose." *Id.* at 594-95; Maj. Slip Op. at 44. In my view, this recognition by the Majority settles the question.

Nevertheless, completing the effects analysis, the lack of a *scienter* requirement in CP §§ 11-701(o), (p), and (q) also favors the State's position, as all "sex offenders, without regard to the offenders' state of mind, must comply." *Long*, 230 Md. App. at 22.

As to whether sex offender registration promotes the traditional goals of punishment, as the Majority observes, because sex offender registration statutes were enacted to protect the public, registration is not properly characterized as retribution. *See* Maj. Slip Op. at 42. However, I also agree with the Majority that there is a deterrent effect to sex offender registration. Maj. Slip Op. at 42-43. While the Majority concludes that this

factor weighs in favor of registration being punitive, I believe this factor is, at best for Rogers, in equipoise. *See Smith*, 538 U.S. at 102 ("Any number of governmental programs might deter crime without imposing punishment. To hold that the mere presence of a deterrent purpose renders such sanctions 'criminal' ... would severely undermine the Government's ability to engage in effective regulation.") (cleaned up).

I agree with the Majority that whether the behavior to which MSORA applies is already a crime also is a factor that is in equipoise. Maj. Slip Op. at 43. In any event, this factor should be accorded limited weight. *Long,* 230 Md. App. at 23.

In sum, Rogers has not "met his burden to establish by the clearest proof," *Doe*, 430 Md. at 591 (Barbera, J., dissenting), that MSORA is sufficiently punitive in effect to render registration a penalty for purposes of an *Apprendi* claim. To the contrary, MSORA is based on SORNA, and is materially similar to other states' sex offender registration laws that, like SORNA, have been held not to be punitive for purposes of *Apprendi*. The Majority does not cite a single case in any jurisdiction that has held registration requirements similar to those Rogers has been ordered to abide by constitute a criminal penalty for purposes of an *Apprendi* claim. However, the cases that have rejected *Apprendi* challenges, concluding that registration requirements similar to Maryland's do not constitute punishment, are legion. *See, e.g., Petersen-Beard*, 377 P.3d at 1129; *People v. Mosley*, 344 P.3d 788, 805 (Cal. 2015); *Kammerer*, 322 P.3d at 839; *State v. Payan*, 765 N.W.2d 192, 200-02 (Neb. 2009); *State in Interest of N.J.,* 275 So. 3d 267, 271-72 (La. Ct. App. 2019); *People v. Golba*, 729 N.W.2d 916, 925-25 (Mich. Ct. App. 2007). The Majority's intents-effects

analysis does not convince me that this Court should stake out a different position from all of the other courts in the country that have rejected *Apprendi* challenges on this basis.

3. Sex Offender Registration Does Not Increase a Registrant's Punishment Beyond the Otherwise Applicable Statutory Maximum.

Even if sex offender registration in Maryland were properly considered a criminal penalty, Rogers's *Apprendi* claim would still fail. As noted above, in *Young,* this Court rejected the petitioner's *Apprendi* challenge to MSORA on two grounds. The Majority only addresses the first of the two bases for *Young*'s holding. *Young*'s alternative holding – that an order to register as a sex offender does not increase a defendant's punishment beyond the otherwise applicable statutory maximum – remains applicable to this analysis, notwithstanding the post-*Young* amendments to MSORA. The Majority overrules this part of *Young sub silentio*. For several reasons, I believe the Majority errs in doing so.

First, it is not clear to me that *Apprendi* applies to situations beyond judicial factfinding at an actual sentencing proceeding. *See Healey v. Carter*, 109 N.E.3d 1043, 1049 (Ind. Ct. App. 2018) (noting that "[t]he issue presented here is not one of judicial fact-finding but rather a determination of the [Department of Corrections] under [Indiana's Sex Offender Registration Act]" and questioning whether "*Apprendi* and its progeny extend beyond judicial factfinding").

Second, as was the case with the petitioner in *Young*, Rogers received a suspended sentence. Thus, he did not receive the statutory maximum sentence for his violation of CR § 11-303(a). Therefore, it is not accurate to say that, even if sex offender registration is

punitive, the Department's order to register resulted in Rogers receiving punishment in excess of the statutory maximum. *See Young,* 370 Md. at 716.

Third, even if Rogers had been ordered to serve a fully executed maximum sentence of 10 years of imprisonment, registration still would not have resulted in a punishment in excess of the statutory maximum for purposes of *Apprendi. See State v. Trujillo,* 430 P.3d 379, 385 (Ariz. Ct. App. 2018) ("[I]t does not necessarily follow that the maximum authorized prison term plus sex-offender registration automatically entitles a defendant to a jury finding of the factor upon which an order requiring registration is based."). That is because, even if registration is considered sufficiently punitive that a change in the law that makes registration more onerous than it was when a registrant was convicted of his criminal offense can create an *ex post facto* problem, registration nevertheless remains a collateral consequence of a conviction, *not a part of the criminal sentence itself. See Doe*, 430 Md. at 560 (Plurality Opinion) (holding that "imposing registration alters the consequences for a prior crime"); *id.* at 600 ("Sex offender registration is not punishment, but [rather] a collateral consequence of a conviction.") (Barbera, J., dissenting); *see also* Md. Rule 4-242(f) (listing sex offender registration and deportation and other immigration-related matters as "collateral consequences" of certain guilty pleas); *Healey*, 109 N.E.3d at 1049-50 (because a "criminal sentence is the punishment ordered by the trial court after conviction—nothing more," sex offender registration is not a "penalty or punishment for the purposes of the Sixth Amendment"); *State v. Chambers*, 138 P.3d 405, 413-14 (Kan. App. Ct. 2006) (in rejecting *Apprendi* challenge to Kansas's sex offender registration law, relying on prior cases in which *Apprendi* was held inapplicable "because the defendants'

*sentences* were not increased beyond the statutory maximum terms … even though the consequences of the district courts' findings clearly increased the defendants' *punishment.* If *Apprendi* does not apply to a sentencing judge's imposition of imprisonment rather than probation based upon a nonjury factual finding that a defendant used a firearm in the commission of a crime or was a gang member, it is not evident how a sentencing judge's determination that a crime was sexually motivated, which results in a defendant's obligation to comply with the comparatively mild sanction of registration, implicates the Sixth and Fourteenth Amendments.") (emphasis in original).

Fourth, the Supreme Court has limited the application of *Apprendi* to those situations in which juries played a factfinding role at common law. *Oregon v. Ice,* 555 U.S. 160, 168 (2009) (explaining that application of the *Apprendi* rule turns on whether the "finding of a particular fact was understood as within the domain of the jury ... by those who framed the Bill of Rights") (cleaned up). The Court also explained that this limitation of *Apprendi* is particularly appropriate when considering a Sixth Amendment challenge to a state law, given the sovereignty issues at stake. *See id.* Thus, when considering Sixth Amendment challenges to state criminal law procedures assigning factfinding to judges, which indisputably affect a criminal sentence, *Apprendi* should not be considered to require reassignment of those functions to a jury "absent impelling reason to do so." *Id.* at 170-71.

As applied to MSORA, *Ice* further demonstrates that the Department's determination of the age of Rogers's victim does not violate the Sixth Amendment. It is obvious that juries historically had no role with respect to imposition of sex offender registration, because sex offender registration is a modern development. Thus, it seems

clear that the Supreme Court would hold the Sixth Amendment does not require a jury to determine a fact that triggers sex offender notification. As the Supreme Court of California reasoned in rejecting the application of *Apprendi* to judicial factfinding that affects sex offender registration in that State:

> [B]oth residency restrictions and underlying sex offender registration requirements are modern regulatory sentencing imperatives unknown at common law. They are akin to a variety of sentencing determinations other than the length of incarceration, of relatively recent vintage, in which trial judges often find facts about the nature of the offense or the character of the defendant—such as the length of supervised release following service of a prison sentence; [and] required attendance at drug rehabilitation programs or terms of community service. They are additional examples of sentencing choices or accoutrements in which juries have played no historical role, and which do not implicate the Sixth Amendment jury trial guarantee within the meaning of *Apprendi.*

*Mosley*, 344 P.3d at 798. So too here.

Finally, even if the imposition of Tier II sex offender registration for a violation of CR § 11-303(a) is a penalty, it is not a penalty for *Apprendi* purposes, because the Department's finding did not increase Rogers's registration "penalty" from one level to another. *See Trujillo*, 430 P.3d at 386 (rejecting registrant's argument that there was a mandatory minimum sentence of no registration under Arizona's system).

The Majority expands *Apprendi* in an unprecedented and unwarranted manner that makes Maryland an outlier in Sixth Amendment and sex offender registration jurisprudence. Respectfully, I believe the Court should tread more carefully than it does here, especially given the public safety goals that the General Assembly has addressed in MSORA.

# III

## The Majority's New Procedure is Not Workable and Will Lead to Results the General Assembly Could Not Possibly Have Intended.

If I agreed with the Majority that the Sixth Amendment requires the criminal trier of fact to make a finding beyond a reasonable doubt of a non-element circumstance that triggers sex offender registration, I would accept that criminal proceedings would have to adapt accordingly, and that any resulting consequences to which the General Assembly and the Maryland citizenry might object would be unavoidable. Because I do not agree that the result here is correct, I will point out what I think are some of the practical problems with the Majority's approach.

The Majority suggests that "[t]o establish the victim's age during the adjudicatory phase beyond a reasonable doubt in a case in which the defendant pleads guilty, the State could pursue an agreed statement of facts that establishes the victim's age." Maj. Slip. Op. at 45. But, of course, a defendant need not oblige. In some cases, the State will likely be able to obtain the defendant's stipulation to the victim's age in exchange for something the defendant wants, perhaps a favorable sentencing recommendation. In other cases, however, a defendant may not agree to admit to the non-element circumstances that would trigger registration. In that event, the Majority posits, the defendant would not plead guilty. Maj. Slip Op. at 46. But is that necessarily so?

Consider this hypothetical. A man grabs a 16 year-old girl he does not know off the street somewhere in the State, forces her into his car, and drives off. Fortunately, in this hypothetical, there is a witness to the violent abduction, who notifies police immediately,

- 45 -

and within minutes officers capture the kidnapper and rescue the victim before the perpetrator can commit any additional crimes against the girl. The State charges the man with one count of kidnapping under CR § 3-502 for having, "by force or fraud … carried" a person within the State. The defendant is well aware of the fact that his victim is a minor, as irrefutable evidence of her age has been provided to the defense in discovery. The age of the victim is not an element of § 3-502. But, under CP § 11-701(q)(1)(iii), a person who is convicted of kidnapping under § 3-502 is a Tier III sex offender "if the victim is a minor." Now imagine that the State, in light of the Majority's ruling today, has offered the defendant a plea agreement that requires him to admit that the victim was a minor. Not wishing to have to register as a sex offender for life, the defendant rejects the plea offer. At his next court appearance, the defendant indicates that he wishes to plead guilty to the charge without a plea agreement. In her recitation of the facts, the prosecutor covers all of the elements of the offense (the forced abduction against the will of the victim, the carrying of the victim within the State, etc.) and then also says that the victim was 16 years old at the time of the offense. Defense counsel or the defendant then responds that everything the prosecutor said is correct, except for the age of the victim. Assuming the prosecutor recited necessary facts to establish the elements of the offense, would the court not be required to accept the guilty plea? Surely, the State cannot prevent the defendant from admitting guilt to all of the elements of the offense. If so, under the Majority's holding today, this hypothetical defendant would not be required to register as a sex offender. I believe this guilty plea scenario will occur with substantial frequency in cases where a defendant is

charged with offenses that can lead to registration only if a non-element circumstance is present.

But what if the defendant does not want to plead guilty at all? In that event, under the Majority's approach, "determination of the victim's age beyond a reasonable doubt could be achieved by a special verdict question submitted to the jury." Maj. Slip Op. at 46. I would imagine that, in the absence of the Majority's holding, a trial judge presiding over my hypothetical kidnapping trial might be amenable to a defense request to prohibit the State from eliciting the victim's age during her testimony. After all, the age of the victim seemingly would be irrelevant to a determination of the defendant's guilt for kidnapping, but could inflame the jurors if they learned it. Perhaps, after today's ruling, some trial judges – concerned about a defendant's right to a fair trial – still will exclude such evidence and therefore decline to give the jury the special verdict form envisioned by the Majority, even with the knowledge that this will make the defendant immune to sex offender registration. It is difficult to imagine what remedy the State would have if a trial judge declined to allow the State to elicit the age of the victim when it is not an element of the criminal offense of which the defendant stands accused. Practically speaking, a trial court's decision to exclude such evidence in my hypothetical case would result in the defendant not registering as a sex offender after being convicted of the kidnapping charge, even though the victim was a minor.

Based on the Majority's holding, many judges likely will admit evidence of the victim's age and then will provide the jury with a special verdict form on which the jury will be asked to answer a question that will resolve whether, upon conviction of the offense,

the defendant will be required to register as a sex offender. The Majority cites no case in Maryland or elsewhere in which a criminal jury has answered such a question on a special verdict form. This is a novel and troubling use of a special verdict form, which has previously been recognized as an appropriate device to create an unambiguous record for appeal in a criminal case, *see State v. Adams,* 406 Md. 240, 294 (2008), *overruled on other grounds*, *Unger v. State,* 427 Md. 383 (2012), not to have a jury make a finding that is relevant only to a collateral consequence of a conviction.

To address the concern of prejudice, the Majority suggests that trial judges consider bifurcating a criminal trial in these circumstances. Maj. Slip Op. at 47. Presumably, in my hypothetical trial, after a finding of guilt, the State would recall the victim and have her testify a second time, this time for the sole purpose of eliciting her age. The trial judge would then re-instruct the jury that they must determine whether the victim was a minor at the time of the offense. Then, the jury would deliberate again and presumably return a "verdict" of "minor" beyond a reasonable doubt.

Putting aside the added layer of complexity and work that this would entail for Circuit Court judges and juries, as well as the need in many instances to make a traumatized young person testify a second time in the same trial, the jury would not be rendering a "verdict" in the second phase of this hypothetical kidnapping trial. A verdict in a criminal case requires a jury to choose between "guilty" and "not guilty" using a reasonable doubt standard (and, when appropriate, between "not criminally responsible" or "criminally responsible," by a preponderance of the evidence, see CP § 3-110(c)). In other words, the Majority is incorrect when it suggests that the jury in this sort of bifurcated proceeding

- 48 -

"would make sequential determinations of the *charges*." Maj. Slip Op. at 47 (emphasis added). Under the bifurcation envisioned by the Majority, the division would be between factfinding beyond a reasonable doubt for a "charges" phase and factfinding beyond a reasonable doubt for a "non-charges" phase that has no relation whatsoever to the sentence the court will impose based on a guilty verdict reached during the "charges" phase. The Majority does not cite any case in which a criminal jury in Maryland or anywhere else has engaged in this kind of exercise.

I am also concerned about the implications of the Majority's holding with respect to the registration requirements of: (1) Maryland residents convicted in other American or foreign jurisdictions after today of crimes that are "similar to" or "would constitute" one of the Maryland offenses or federal offenses that trigger sex offender registration in Maryland; and (2) non-Maryland residents who move to Maryland to live or work after having been convicted after today in another jurisdiction of crimes that are "similar to" or "would constitute" one of the Maryland offenses or federal offenses that trigger sex offender registration. Unless such a person voluntarily registers as a sex offender for fear of violating the criminal prohibition for failing to register, someone needs to determine that a person in one of these two classes is required to register, or else the General Assembly's intent in enacting MSORA will be frustrated with respect to these persons. As discussed above, no jury would ever be in a position to determine in such a person's criminal case whether the foreign jurisdiction's crime is "similar to" or "would constitute" one of the Maryland or federal offenses referred to in CP § 11-701.

The Majority does not address these other circumstances that lead to registration, but Rogers believes that *Apprendi* requires them also to be proven beyond a reasonable doubt. That is, under the logic of the Majority's holding today, "[b]ecause these additional elements would add to a defendant's punishment by requiring registration, they must be submitted to a jury and proven beyond a reasonable doubt." Brief for Petitioner at 21. A case testing this proposition will likely soon make its way through the courts, and if Rogers is correct, not only will Maryland residents convicted of sex crimes in other jurisdictions no longer have to register under MSORA; sex offenders in other states also will take notice. Because the Majority's ruling is unique among the states, Maryland soon thereafter may become a haven for other jurisdictions' sex offenders.[20]

**IV**

**Summary Judgment Should Be Entered in Favor of Respondents.**

As discussed above, I would hold that the Department, as Rogers's Supervising Authority, had the power under MSORA and its implementing regulations to determine the age of Rogers' victim, and that neither the Maryland Declaration of Rights nor the Sixth Amendment to the United States Constitution requires us to declare this delegation of authority to the Department to be invalid. It follows that the Circuit Court erred in granting

---

[20] Another test case that likely will be filed soon will be from a defendant in circumstances similar to Rogers, who was convicted of a criminal offense before today. I offer no opinion on whether the relief the Majority provides to Rogers today will be available to other similarly situated current registrants and to those persons who would otherwise become registrants, based on a prior conviction, after they are released from jail terms they are currently serving. I only predict that many of these individuals – who never disputed that their victims were minors – will file declaratory judgment actions challenging the application of MSORA to them.

summary judgment to Rogers, and the Court of Special Appeals was correct to reverse the Circuit Court.

The Court of Special Appeals directed the Circuit Court on remand to hold further proceedings to determine whether Rogers's victim was a minor at the time Rogers committed his offense. 240 Md. App. at 370. The Court contemplated that the State would need to introduce "affirmative evidence of M.H.'s minority" to prove by a preponderance of the evidence that M.H. was, indeed, under 18 years of age on April 3, 2015. *Id.* On this point, I disagree with the Court of Special Appeals.

The Circuit Court should have considered in the first instance whether the Department's finding that M.H. was a victim at the time of the offense was supported by substantial evidence, reviewing the record in the light most favorable to the Department. *See Maryland Dep't of Env't v. Anacostia Riverkeeper,* 447 Md. 88, 119-20 (2016); *Banks*, 354 Md. at 68. In her recitation of the statement of facts during Rogers's plea colloquy, the prosecutor twice described M.H. as "the missing *girl*." *See* Maj. Slip Op. at 4, 5 (emphasis added). In my view, those references to M.H. as a "girl" – to which Rogers did not offer any correction – in conjunction with the description of the victim as a minor in the investigating officer's sworn Statement of Charges and in the grand jury's indictment, provide substantial evidence in support of the Department's finding that M.H. was a minor at the time of the offense. It follows that Rogers is a Tier II sex offender under MSORA. For these reasons, I would remand the case to the Circuit Court with instructions to grant summary judgment in favor of Respondents and to enter a judgment declaring that Rogers is a Tier II sex offender under MSORA, and must continue to register as such.

Chief Judge Barbera and Judge Hotten have authorized me to state that they join in this opinion.